Exhibit A

Angela M. Alioto. Esq. (SBN 130328)
Steven L. Robinson. Esq. (SBN 116146)
Joe Alioto Veronese, Esq. (SBN 214607)
**LAW OFFICES OF JOSEPH L. ALIOTO**
**AND ANGELA ALIOTO**
700 Montgomery Street
San Francisco, CA 94111
Telephone: (415) 434-8700

W. Hunter Winstead, Esq. (Pro Hac Vice)
**Gilbert LLP**
700 Pennsylvania Ave SE, Suite 400
Washington DC 20003
Telephone: (202) 772-2200

Attorneys for Plaintiff STEPHENS INSTITUTE

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**12/27/2021**
**Clerk of the Court**
BY: KAREN VALDES
Deputy Clerk

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

**CGC-21-597326**

| | |
|---|---|
| **STEPHENS INSTITUTE d/b/a** **ACADEMY OF ART UNIVERSITY,**<br><br>        **Plaintiff,**<br><br>        v.<br><br>**RSUI INDEMNITY COMPANY,** **and Does 1 through 100, inclusive,**<br><br>        **Defendants.** | **CASE No.**<br><br>**COMPLAINT FOR:**<br>  1.  **BREACH OF CONTRACT**<br><br>  2.  **BREACH OF COVENANT** **OF GOOD FAITH AND FAIR** **DEALING**<br><br>  3.  **VIOLATION OF BUSINESS** **AND PROFESSIONS CODE** **SECTION 17200, et seq.**<br><br>**DEMAND FOR JURY TRIAL** |

        Plaintiff Stephens Institute, doing business as Academy of Art University ("AAU" or

"Plaintiff"), by and through undersigned counsel, for its Complaint against Defendant RSUI Indemnity

Company ("RSUI" or "Defendant"), respectfully states and alleges as follows.  Defendant RSUI

entered into a contract to provide insurance coverage to the Plaintiff.  When AAU was named as a defendant in multiple litigations, it turned to RSUI for insurance coverage and RSUI agreed to cover the defense of the Plaintiff's actions, but with a caveat.  RSUI parsed the counts in the litigations asserted against AAU into "covered" and "non-covered" components and asserted it was entitled to discount its defense obligations pursuant to an "Allocation" provision in its policy.  Without agreement with RSUI on this point, AAU proceeded to defend itself in the underlying litigations without receiving any payment from RSUI for its defense.

The "Allocation" question became academic during the pendency of the underlying claims, as AAU's defense expenses incurred in defended itself exceeded, by a multiple, the $2 million aggregate limit provided by RSUI's policy.  RSUI's contentions that its coverage obligations were limited based upon "Allocation" were further mooted when AAU reasonably settled certain litigation brought against it by the City and County of San Francisco, California for an amount exceeding $57 million. No matter how the "Allocation" defense asserted by RSUI is framed, the aggregate limit provided by RSUI's policy, even under assumptions most favorable to RSUI, is exhausted by covered losses many times over. RSUI nonetheless has unreasonable, maliciously and unlawfully refused to pay any monies to AAU under the policy to date.

Following a tender of its defense invoices to RSUI in October 2019, AAU used its best efforts to resolve its dispute with RSUI, including through participation in a mediation before Retired Judge William J. Cahill and counsel for RSUI between August and June 2021. Despite AAU's best efforts, the parties were not able to resolve their dispute, as RSUI continues to refuse any payment or resolution.  RSUI's contentions are unsupported and AAU is entitled to receive the full benefit of the $2 million in insurance it purchased from RSUI, which RSUI has conceded provides coverage to RSUI for the underlying matters, plus additional damages based upon RSUI's unreasonable and bad faith refusal to fulfill its obligations, as discussed further below.

COMPLAINT FOR DAMAGES

1

**NATURE OF THE ACTION**

2      1.     This civil action arises from the Defendant's breach of contract and breach of the

3 covenant of good faith and fair dealing concerning an insurance coverage agreement between AAU, as

4 a policyholder, and RSUI, a liability insurer that sold an insurance policy to AAU.

5      2.     Specifically, this dispute involves AAU's rights under a directors' and officers' liability

6 insurance policy issued by RSUI.  RSUI agreed to defend certain matters asserted against AAU

7 subject to various reservations of rights and purported limitations regarding how RSUI's coverage is

8 apportioned between covered and allegedly non-covered aspects of AAU's claims.

9

10     3.     RSUI has not disputed that it owes coverage to AAU under its policy in connection

11 with certain claims asserted against AAU.  Rather, Defendant disputes the extent of its coverage

12 obligations to AAU and how much RSUI should pay as a result.

13

14     4.     Accordingly, AAU seeks a ruling that Defendant has breached the RSUI policy and

15 done so in bad faith by refusing to provide full coverage under its policy for the claims asserted

16 against AAU.  Additionally, AAU seeks compensatory damages, extra-contractual damages for bad

17 faith, interest, costs, attorneys' fees, and such other relief as this Court deems just and proper.

18

**PARTIES**

19      5.     Plaintiff AAU is a for-profit post-secondary educational school for art and design with

20 its principal place of business at 79 New Montgomery St., San Francisco, California 94105.

21      6.     Defendant RSUI is a company organized under the laws of New Hampshire with its

22 headquarters at 945 East Paces Ferry Road, Suite 1800, Atlanta, Georgia 30326, and an office at

23

24 15303 Ventura Boulevard, Suite 500, Sherman Oaks, California 91403.  RSUI is engaged in the

25 business of selling insurance and is licensed to do business in California.

26

27

28

7.     The true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise, of DOE Defendants 1 through 100, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. The full extent of facts linking such fictitiously sued Defendants is unknown to Plaintiff.  Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated as a DOE was, and is, negligently, recklessly, and/or intentionally responsible for the events and happenings hereinafter referred to, and thereby negligently, recklessly, and/or intentionally legally and proximately caused the hereinafter described injuries and damages to Plaintiff.  Plaintiff will hereafter seek leave of the Court to amend this Complaint to show the fictitiously sued Defendants' true names and capacities, after the same have been ascertained.

**<u>JURIDISCTION AND VENUE</u>**

8.     This Court has jurisdiction over the entire action as this is a civil action wherein the matter in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of the Court. The acts and omissions complained of in this action took place, in whole or in part, in the State of California.  The insurance contract at issue was entered into in California and was issued to an insured located in the State of California.

9.     This Court has personal jurisdiction over the Defendant because it is now, or within the time period relevant to the claims asserted herein or within the time period relevant to the issuance of the RSUI policy by the Defendant to AAU, has been licensed to do business in California; is transacting or has transacted business in California; has contracted to insure persons, property, or risks located in California; has contractually or otherwise consented to submit to personal jurisdiction in California; and/or has other significant contacts with California.

10.     The Defendant therefore has sufficient contacts with California that give rise to the present action, has continuous and systematic contacts with California, and/or has consented either

4
COMPLAINT FOR DAMAGES

explicitly or implicitly to the jurisdiction of this Court.

11.     Venue is proper in this county pursuant to Section 395(a) of the California Code of Civil Procedure because the alleged wrongs occurred in this county.

## **FACTUAL BACKGROUND**

### I.     **RSUI'S POLICY**

12.     RSUI insured AAU for over a decade and issued a "Directors and Officers Liability" policy (the "Policy") for the period January 1, 2016 to January 1, 2017 (the "Policy Period").[1]   The Policy provides a $2 million aggregate limit.

13.     Coverage is available under the Policy for an Insured Organization[2] "if a Claim for a Wrongful Act is first made against the Insured Organization during the Policy Period and reported in accordance with Section V. – Conditions C. Notice of Claim or Circumstance of this policy, the Insurer will pay on behalf of the Insured Organization all Loss the Insured Organization is legally obligated to pay."

14.     A "Claim" is defined as, among other things, "a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by: a. receipt or service of a complaint or similar pleading; b. return of an indictment (in case of a criminal proceeding); or c. receipt of a notice of charges."   A Claim that triggers coverage under the RSUI Policy is not limited by the sort of relief sought; a Claim triggers RSUI's obligations under its Policy regardless of whether it seeks monetary or non-monetary relief.

15.     "Wrongful Acts" are broadly defined in the RSUI Policy to include "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty . . . by . . .

---

[1] A copy of the Policy is attached as **Exhibit A**.

[2] The RSUI Policy identifies "Stephens Institute dba Academy of Art University" as the Named Insured.  RSUI does not dispute that AAU is insured by its Policy.

[t]he Insured Organization."  The Policy's "Wrongful Act" definition does not limit the scope of coverage provided under RSUI's Policy to Claims involving Wrongful Acts that actually result or may result in a compensable Loss under the Policy.

16.     "Loss" is defined in the RSUI Policy to include "damages (including front and back pay), settlements, judgments (including pre- and post- judgment interest on a covered judgment) and Defense Expenses."  The RSUI Policy includes nine sub-clauses in its "Loss" definition that carve out various remedies or forms of damages from the definition of "Loss."  None of these carve-outs foreclose payment of Loss for equitable relief or an injunction.

17.     The RSUI Policy requires RSUI to "defend any Claim against the Insured for which coverage applies under this policy, and the Insurer shall have the right to appoint counsel of its choosing."  RSUI's rights with respect to the appointment of counsel, however, do not permit it to unreasonably impose upon AAU any counsel over AAU's reasonable objections, nor does it permit RSUI to control the defense of AAU's claim where a coverage dispute presents a conflict of interest between the policyholder and the insured.

18.     Lastly, the RSUI Policy includes an "Allocation" provision, which provides:

> If both Loss covered under this policy and loss not covered under this policy are jointly incurred either because a Claim includes both covered and non-covered matters or covered and non-covered causes of action or because a claim is made against both an Insured and any other parties not insured by this policy, then the Insured and the Insurer shall use their best efforts to fairly and reasonably allocate payment under the policy between covered Loss and non-covered loss based on the relative legal exposures of the parties with respect to covered and non-covered matters or covered and non-covered causes of action.
>
> If the Insurer and the Insured agree on an allocation of Defense Expenses, based on covered and non-covered matters or persons, the Insurer shall advance Defense Expenses allocated to covered Loss.  If there is no agreement on an allocation of Defense Expenses, the Insurer shall advance Defense Expenses that the Insurer believes to be covered under the policy until a different allocation is negotiated, arbitrated, or judicially determined.

## II.     THE CCSF AND GOLDBERG MATTERS

6

19.     Over the course of 2016–2017, AAU was named as a defendant in several actions, which it submitted to RSUI for coverage.

20.     On May 6, 2016, the City and County of San Francisco brought an action against AAU, and various affiliated limited liability companies, asserting "blatant disregard for the San Francisco Planning Code," alleging, among other things, that AAU changed the use of over 22 student housing buildings in San Francisco in violation of the Planning Code. *People of the State of California, ex rel. Herrera v. Stephens Institute, d/b/a Academy of Art University*, San Francisco Superior Court Case No. CGC-I6-551832 (the "*CCSF* matter").

21.     The following week, on May 13, 2016, Bennett Goldberg and Linda Kuckuk, parents of a deceased former AAU student, filed an action against AAU in federal court alleging, through various iterations and amendments, violations of various California consumer protection laws, unjust enrichment, the Unruh Civil Rights Act, and the San Francisco Rent Ordinance based upon certain alleged misrepresentations made by AAU regarding its student housing. *Bennett Goldberg & Linda Kuckuk v. Stephens Institute*, United States District Court for the Northern District of California Case No. 4:16-cv-02613-JSW.

22.     Following the dismissal of this initial *Goldberg* litigation due to lack of standing, on March 30, 2017, a related action was filed against AAU in the Superior Court In and For the City and County of San Francisco seeking relief pursuant to Section 37.10B of the Rent Ordinance on behalf of a putative class of students who executed bed licenses with AAU. *Bennett Goldberg & Linda Kuckuk v. Stephens Institute*, Superior Court Case No. CGC 17-557866 (taken together with the related federal suit filed in the Northern District of California, Case No. 4:16-cv-02613-JSW, the "*Goldberg* matter").

**III.     RSUI ACKNOWLEDGES COVERAGE UNDER THE POLICY, RESERVES ITS RIGHTS, THEN REFUSES TO PAY**

23.     The *Goldberg* and *CCSF* matters were timely tendered to RSUI for coverage, which

agreed to appoint counsel and defend AAU, partially and subject to a reservation of its rights, while demanding that AAU: (a) accept as counsel a firm that had previously been adverse to AAU in a major litigation; and (b) self-fund the majority of its Defense Expenses based upon RSUI's unfounded contention that aspects of these Claims were not covered.

24.     Specifically, in an August 26, 2016 letter, RSUI agreed to "defend [the *CCSF* matter] under a reservation of rights," noting that for claims first made during the policy period, "coverage would appear to apply and [RSUI] would be obligated to defend."  In addition, RSUI asserted that because: (a) one of the properties at issue had been the subject of prior proceedings involving allegedly similar violations; and (b) "The CCSF Action does not currently seek any covered Loss," 80% of AAU's Loss related to this claim, including Defense Expenses, should be allocated to non-covered matters and borne by AAU.

25.     RSUI likewise acknowledged coverage and agreed to defend AAU for the *Goldberg* matter in an August 11, 2016 letter.  However, based upon the nature of the relief sought by the plaintiffs, RSUI contended that its obligations were limited to 1/3 of AAU's Defense Expenses.

26.     Given a prior adverse posture in another matter (RSUI's proposed counsel, Gordon & Rees had been adverse to AAU in another case) and in light of the conflicting interests presented by RSUI's coverage position, AAU rejected RSUI's proposed counsel and proceeded to defend itself in both the *CCSF* and *Goldberg* actions.

27.     Specifically, the Gordon Rees firm previously represented a client in suing AAU. Specifically, in the late 1990s, the San Francisco Olympic Club undertook to renovate a portion of its property, which was adjacent to certain AAU buildings.  The Olympic Club's renovations damaged AAU's property, and, in 2003, AAU commenced litigation against the Olympic Club in California state court captioned *Academy of Art University, Inc. et al. v. San Francisco Olympic Club, Inc. et al.*, Case No. CGC-03-427640 (Cal. Super. Ct. 2003).  Gordon & Rees represented the Olympic Club in

that litigation.  Thus, notwithstanding whatever rights RSUI may have had with respect to the appointment of defense counsel under its policies, those rights did require AAU to accept a defense from a firm that was adverse to it in a prior major litigation.  AAU made this objection clear to AAU at the outset of the *Goldberg* and *CCSF* matters, which RSUI ignored.

28.     Moreover, the coverage positions asserted by RSUI regarding the *Goldberg* and *CCSF* matters entitled AAU to independent counsel.  RSUI offered to provide a defense to AAU in the *Goldberg* and *CCSF* actions, subject to a reservation of rights.  But RSUI contended, and continues to contend, that its obligations in *Goldberg* were limited under its allocation provision because "the State Court Action does not currently assert any legal theory under which covered Loss could be awarded." Based on this contention, RSUI proposed that "2/3 of the Loss, including Defense Expenses, be allocated to non-covered matters to be borne by AAU."

29.     Similarly, in the *CCSF* litigation, RSUI alleged that "Because the CCSF Action does not currently seek any covered Loss and CCSF's claim as to 460 Townsend Street is not covered," RSUI "proposes 4/5 of the Loss, including Defense Expenses, be allocated to non-covered matters to be borne by AAU."

30.     In both cases, RSUI sought to discount its obligations, not because there was no "Claim" made against AAU or "Wrongful Act" alleged by the plaintiffs.  But rather, RSUI asserted that because of the nature of the remedies sought by the plaintiffs in these cases, a fully litigated outcome would not require it to pay anything for a judgment adverse to AAU.  These were precisely the sort of situations in which it was critical that AAU be afforded its own independent counsel.

31.     AAU also, for the reasons discussed herein, rejected RSUI's proposed allocation between covered and non-covered loss for both the *CCSF* and *Goldberg* matters.  RSUI's proposed allocations in the *Goldberg* and *CCSF* matters were not supported by the relevant considerations set forth in its Policy.  The allocation provision in RSUI's Policy required that the parties allocate between

9

covered Loss and Loss that is not covered "based upon the relative legal exposures of the parties with respect to covered and non-covered matters or covered and non-covered causes of action." RSUI's allocation proposals did not appropriately account for the "relative legal exposures" presented by the *Goldberg* and *CCSF* litigations.

32.     RSUI's sole contentions for allocating 2/3 of all Loss in the *Goldberg I* matter to be borne by AAU were that: (a) "penal fines," the only monetary relief sought by plaintiffs, are not covered under the policies' definition of "Loss"; and (b) the plaintiffs' claim for "Public Injunction" "typically [does] not constitute damages covered by the Policy."

33.     With respect to *CCSF*, RSUI similarly asserted that because its policies' definition of "Loss" does "not include civil penalties or the cost of complying with injunctive relief," the case did not seek any covered "Loss" and 4/5 of the Defense Expenses should be allocated to non-covered matters and borne by AAU.

34.     RSUI's analysis was backwards. The allocation determination is not based upon the ultimate "Loss" which could result in a matter, but is premised upon the "relative legal exposures of the parties with respect to covered and non-covered *matters* and covered and non-covered *causes of action*." In other words, the allocation determination is made based upon the nature of the alleged matter or cause of action, and not based upon the hypothetical outcome with respect to a particular relief sought by a plaintiff. It is the alleged "Claim" and "Wrongful Act" that is determinative of RSUI's defense obligations, not the remedy claimed by the plaintiffs.

35.     This much is clear from the Insuring Agreement in RSUI's policies, which provides that RSUI's obligations are triggered by "a Claim for a Wrongful Act" that is "first made against the Insured Organization during the Policy Period." The definition of "Claim" includes a "civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief." Critically,

this definition does not require a compensable "Loss" for the Policy to be triggered.  It bears emphasis that a "Claim" triggering RSUI's obligations under the Policy can solely seek "non-monetary relief."

36.    Moreover, the Policy's definition of "Wrongful Act," means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or beach of duty … by the Insured Organization," without any requirement that such "Wrongful Act" actually result in a compensable "Loss" under the Policy.

37.    It is illogical that a lawsuit filed against RSUI's insured that includes a single count for non-monetary relief could satisfy the Policy's definition of "Claim," and allege a "Wrongful Act," thereby triggering RSUI's defense obligation (which is not linked to any particular remedy, relief, or form of "Loss"), but require a 0% allocation to coverage because, in RSUI's view, it would not seek a remedy or relief within the Policy's definition of Loss.  The manner in which RSUI proposed to circumscribe its broad defense obligation is irreconcilable with the terms of its Policy.

38.    RSUI's contention that allocation to non-coverage is further warranted because costs associated with equitable relief (*e.g.*, injunctions) typically do not constitute damages covered by its policies was also unfounded.  Language supporting this proposition is nowhere to be found in the RSUI's Policy.  Rather the Policy specifically required that RSUI pay "all Loss" that the insured "is legally obligated to pay."  "Loss" is defined to include "damages (including front and back pay), settlements, judgments (including pre- and post- judgment interest on a covered judgment) and Defense Expenses."  A judgement against AAU or a settlement requiring it to incur costs in connection with injunctive relief would fall within this definition.  There was simply no basis in the Policy supporting RSUI's contention that any aspect of the *Goldberg* or *CCSF* litigations that seeks "equitable relief" was not covered and must be accounted for accordingly in an allocation.

39.    Nor was there any credible basis in the *CCSF* matter to discount the allocation based upon alleged prior violations at one of the properties at issue in that litigation (460 Townsend Street),

or any other property for that matter.  The litigation brought by the City and County of San Francisco against AAU was unquestionably commenced during the 2016 period.  No prior action based on these properties had been commenced by the City or County against AAU by serving a complaint or similar proceeding.  And the attempts by RSUI to evade its obligations by linking prior alleged violations at any properties to this litigation would defeat the purpose of its coverage; an isolated and routine building code violation at a property cannot foreclose coverage for a subsequent civil litigation, years later, seeking tens of millions of dollars.  Suggestions by RSUI in its coverage correspondence that it could limit its obligations for the *CCSF* matter in this manner were unfounded.

40.    On October 2, 2019, AAU tendered all invoices incurred to date in the defense of the *CCSF* and *Goldberg* matters to RSUI and demanded payment.  RSUI refused to pay any amount of the defense invoices submitted for payment without any reasonable basis.  As of that time, AAU had incurred approximately $6,927,720.00 in attorneys' fees and costs in defending the *CCSF* matter and approximately $2,386,852.55 in attorneys' fees and costs in defending the *Goldberg* matter. Additional defense costs have continued to accrue in these matters.

41.    The *CCSF* matter was resolved for a total settlement payment of $57.96 million.  The *CCSF* settlement was approved and began to be implemented in 2020.  AAU promptly provided the finalized settlement to RSUI and advised that it was seeking indemnification under the Policy.

42.    The *Goldberg* matter remains pending and AAU continues to accrue attorneys' fees and costs in connection with its defense.

43.    By any reasonable measure, the Defense Expenses alone owed by RSUI to AAU fully exhaust the $2 million aggregate limit under Policy.  When the settlement in the *CCSF* matter is considered, there is no question that the limits of the Policy have been fully exhausted and for matters that RSUI has acknowledged it has coverage obligations.

IV.     **AAU'S ENTITLTEMENT TO COVERAGE IN FULL FOR THE CCSF AND GOLDBERG MATTERS**

44.     RSUI agreed to defend certain matters asserted against AAU, including the *CCSF* and *Goldberg* matters, subject to various reservations of rights and purported limitations regarding how RSUI's coverage is apportioned between covered and allegedly non-covered aspects of AAU's Claims.

45.     The quantum of the attorneys' fees and costs AAU has incurred in defending the *CCSF* and *Goldberg* matters is sufficient to exhaust the entire aggregate limit of the Policy.

46.     No exclusions or limitations found in the RSUI Policy operates to limit or preclude coverage for the Claims against AAU.

47.     Defendant has refused to honor and satisfy its obligations under the RSUI Policy by providing full coverage for the Claims asserted against AAU.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**

48.     AAU restates and re-alleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

49.     The RSUI Policy constitutes a valid and enforceable written contract.

50.     AAU performed all obligations and conditions, whether express or implied, and has complied with all applicable terms and conditions under the RSUI Policy.

51.     Pursuant to the terms of the Policy, RSUI is obligated to provide coverage to AAU for defense costs and indemnity amounts incurred in connection with the *CCSF* and *Goldberg* matters. Indeed, there is no dispute (and RSUI has not disputed) that the *CCSF* and *Goldberg* matters presented Claims covered, at a minimum in part, by the Policy.

52.     RSUI has breached its obligations under the Policy by failing to pay AAU's covered losses for the *CCSF* and *Goldberg* matters.

53.     AAU has been damaged and continues to sustain damages due to RSUI's breaches of

the Policy in an amount to be determined at trial but anticipated to be up to and beyond the aggregate

limit of the Policy.

54.     As a result of RSUI's breaches of the Policy, AAU requests entry of judgment for

breach of contract, awarding payment of damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### Breach of the Implied Covenant of Good Faith & Fair Dealing

55.     AAU restates and re-alleges all of the foregoing paragraphs of this Complaint as though

fully set forth herein.

56.     The Policy constitutes a valid and enforceable written contract.

57.     AAU performed all obligations and conditions, whether express or implied, and

complied with all applicable terms and conditions of the Policy.

58.     The Policy includes an implied covenant that RSUI will act in good faith and deal fairly

with AAU.

59.     RSUI breached the implied covenant of good faith and fair dealing by among other

things: (a) failing to pay AAU's claim for coverage without any reasonable basis; (b) attempting to

impose upon AAU defense counsel that had been adverse to AAU in another matter and was subject to

conflicts of interests in the *CCSF* and *Goldberg* matters; (c) acting solely in in its own economic

interests without any regard for the interests of AAU; and (d) compelling AAU to file this lawsuit to

obtain the coverage owed under the Policy.

60.     As a result of RSUI's breaches of the implied covenant of good faith and fair dealing,

AAU has incurred substantial damages, including but not limited to attorneys' fees they are being

forced to incur to obtain the coverage owed under the Policy.

61.     Because RSUI's conduct was malicious and oppressive, AAU is also entitled to

14
COMPLAINT FOR DAMAGES

punitive damages.

62.      As a result of RSUI's breaches of its duties of good faith and fair dealing, AAU request entry of judgment, awarding payment of damages, including but not limited to attorneys' fees, as well as punitive damages.

### THIRD CLAIM FOR RELIEF
### <u>Violation of Business and Professions Code Section § 17200</u>

63.      Plaintiff references all previously alleged paragraphs of this Complaint, and by such reference incorporates those paragraphs herein as though set forth in full.

64.      Plaintiff is informed and believes, and thereon alleges that the acts and omissions described herein constitute the standard and ongoing business practices of the named and fictitiously designated Defendants, and each of them.

65.      Defendant and its employees are bound by state law to comply with the California Fair Claims Settlement Practices Regulations (10 Cal. Code Regs. § 2695.1 *et seq*.). Defendant violated those regulations and will continue violating those regulations in its handling of Plaintiff's claim and claims submitted by other California policyholders unless an injunction is issued by this Court prohibiting such conduct.

66.      The acts and omissions of the named and fictitiously-designated defendants, and each of them described herein, constitute a violation of various statutes and regulations governing the conduct of insurers in the State of California, including those promulgated under Insurance Code § 790.03(h), various regulations promulgated by the Department of Insurance as set forth in Title 10 of the California Code of Regulations § 2695.1 *et seq.*, and California statutes that have been promulgated to prohibit unfair and deceptive insurance practices and insurance fraud.

67.     Plaintiff is informed and believes, and thereon alleges that the acts and omissions of the named and fictitiously-designated defendants, and each of them, constitute unlawful, unfair or fraudulent business acts or practices within the meaning of Business and Professions Code § 17200.

68.     Plaintiff has suffered a direct injury as a result of the acts and omissions of Defendants, and each of them described herein, including the unreasonable and unlawful deprivation of Policy benefits, as well as mental and emotional pain and suffering.

69.     In addition to sustaining the unreasonable and unlawful deprivation of Policy benefits, as well as the mental and emotional pain and suffering stated herein, Plaintiff has also incurred costs that resulted from such unlawful, unfair and fraudulent business acts, practices and conduct of the named and fictitiously-designated defendants, and each of them.

70.     Plaintiff seeks an Order enjoining all of the named and fictitiously-designated defendants, and each of them, from engaging in further unlawful, unfair or fraudulent business acts and practices within the State of California.

## **PRAYER FOR RELIEF**

**WHEREFORE**, AAU respectfully requests an order and relief as follows:

1.     For general and special damages according to proof;
2.     For monetary damages including all available incidental, actual, consequential, special, and compensatory damages;
3.     For extra-contractual damages for RSUI's breach of the implied warranty of good faith and fair dealing;
4.     For pre-judgment and post-judgment interest as to Plaintiff's compensatory and consequential damages at the maximum rate permitted by law;
5.     For loss of income come from funds expended and interest earnings on funds expended, excluding prejudgment interest for the same.
6.     For the costs of suit;
7.     For an award of punitive and/or exemplary damages in an amount to punish Defendants, and each of them, and deter them from engaging in similar conduct in the future;
8.     For attorney fees not limited to the Policy benefits;
9.     For injunctive relief; and,
10.    Any such other and further relief to which this Court may deem to be justly entitled.

1

2

### **JURY TRIAL DEMAND**

3          AAU hereby demands a jury trial on all issues of fact properly triable by jury.

4

5    DATED: December 27, 2021                    **LAW OFFICES OF JOSEPH L. ALIOTO
                                                  AND ANGELA ALIOTO**

6

7                                          By: _____
                                                 Angela Alioto (Dec 27, 2021 15:47 PST)

8                                               Angela M. Alioto
                                                Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

# DIRECTORS AND OFFICERS LIABILITY POLICY DECLARATIONS

**RSUI**

Corporate Office
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326

| COMPANY SYMBOL | POLICY PREFIX & NUMBER | RENEWAL OF |
|---|---|---|
| N | HP665974 | NHP660907 |

●**THIS IS A CLAIMS MADE POLICY.  PLEASE READ IT CAREFULLY.**●

THIS POLICY IS ISSUED BY:   RSUI Indemnity Company (hereinafter referred to as the Insurer)

**ITEM 1.**   INSURED'S NAME AND MAILING ADDRESS                    PRODUCER'S NAME AND ADDRESS

STEPHENS INSTITUTE DBA ACADEMY OF ART UNIVERSITY

ATTENTION: HUMAN RESOURCES DEPARTMENT

79 NEW MONTGOMERY STREET

SAN FRANCISCO, CA 94105

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS HEREIN OR ATTACHED HERETO, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE INSURER AGREES TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**ITEM 2. POLICY PERIOD:**

FROM ____1/1/2016____ TO ____1/1/2017____ 12:01 AM Standard Time at the Insured's address as stated herein

**ITEM 3. LIMIT OF LIABILITY:**

$ ____2,000,000____ Aggregate Limit of Liability each policy period

**ITEM 4. RETENTION:**

$ __0__ Insuring Agreement A
$ __150,000__ Insuring Agreement B
$ __150,000__ Insuring Agreement C
$ __150,000__ Employment Practices Claim

**ITEM 5. PREMIUM:**

$ ____121,000.00____

**ITEM 6. POLICY FORM AND ENDORSEMENTS MADE A PART OF THIS POLICY AT THE TIME OF ISSUE:**
SEE RSG 200007 0204 - SUPPLEMENTAL DECLARATIONS - SCHEDULE OF ENDORSEMENTS; RSG 241001 0609 - DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY - 2009

THESE DECLARATIONS TOGETHER WITH THE COMPLETED, SIGNED AND DATED APPLICATION, POLICY FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned: _____    ____January 27, 2016____    _David E. Leonard_
                                                                     DATE                    AUTHORIZED REPRESENTATIVE

RSG 200006 0204

A member of Alleghany Insurance Holdings LLC

**DIRECTORS AND OFFICERS LIABILITY POLICY
SUPPLEMENTAL DECLARATIONS**

*RSUI*

POLICY NUMBER:     NHP665974

SCHEDULE OF ENDORSEMENTS

| TITLE | FORM NUMBER |
|---|---|
| Disclosure Pursuant to Terrorism Risk Insurance Act | RSG 204123 0116 |
| Absolute Exclusion - Bodily Injury and Property Damage with Allocation | RSG 246008 0315 |
| Absolute Exclusion - Sexual Abuse with Allocation | RSG 206096 0315 |
| Amended Notice of Claim or Circumstance - Specific Position Trigger | RSG 204151 0911 |
| California Changes - Cancellation and Nonrenewal | RSG 203005 0611 |
| Cap on Losses From Certified Acts of Terrorism | RSG 204081 0315 |
| Class Action Retention | |
| Coverage Extension - Educational Institution Modified | |
| Coverage Extension - Federal Immigration & Nationality Act | RSG 204159 0210 |
| Exclusion - FCRA and FDCPA Claims | |
| Exclusion - Prior and or Pending Litigation Backdated | RSG 206071 0204 |
| Exclusion - Remove Anti-Trust | RSG 246003 0606 |
| Exclusion - Telecommunications Claims | RSG 206097 0315 |
| Full Severability | RSG 204126 0204 |
| Insuring Agreement A - Separate Limit | RSG 204143 0407 |
| Investigative Costs Coverage | RSG 204139 0207 |
| Modified Insured vs. Insured Exclusion (Carve Back Former D&O's) | RSG 246004 0609 |
| Severability of the Entity | RSG 204145 0407 |
| Side A and B Non-Rescindable Coverage | RSG 204158 0808 |
| Sublimit - Credentialing - Peer Review | RSG 204112 0210 |
| Sublimit - Defense Expenses - Wage and Hour Claims | RSG 204153 0609 |
| Third Party Liability Coverage | RSG 204119 1011 |
| Three (3) Year Bilateral Discovery Period | RSG 207002 0204 |

**RSUI INDEMNITY COMPANY**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE A PART OF THIS POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT.  THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THIS POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE\***

| | |
|---|---|
| **Terrorism Premium** | **$0** |

**Additional information, if any, concerning the terrorism premium:**
**The portion of your premium for the policy term attributable to coverage for all acts of terrorism covered under this policy including terrorist acts certified under the Act is listed above.**

*Information required to complete this Schedule, if not shown above, will be shown in the Declarations Page.*

A. **Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act, as amended, the **Insurer** is required to provide the **Insured** with a notice disclosing the portion of the **Insured's** premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.  The portion of the **Insured's** premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations Page.

As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B. **Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program.  Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses that exceeds the applicable **Insurer** retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

C. **Cap Insurer Participation in Payment of Terrorism Losses**

If aggregate **Insured** losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the **Insurer** has met our **Insurer** deductible under the Terrorism Risk Insurance Act, the **Insurer** will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case **Insured** losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**Policy No.:** NHP665974      **Effective:** 1/1/2016

RSG 204123 0116

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# ABSOLUTE EXCLUSION – BODILY INJURY AND PROPERTY DAMAGE WITH ALLOCATION

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY – PRIVATE COMPANY**

SECTION IV. - EXCLUSIONS, 4. is amended to read as follows:

**4.**   Alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

**a.**   Bodily injury, sickness, disease or death of any person, mental anguish or emotional distress; provided, this EXCLUSION 4.a. will not apply to allegations of mental anguish or emotional distress made solely in connection with an **Employment Practices Claim**; or

**b.**   Damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is physically damaged;

provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of **Loss** arising from any such **Claim** shall be allocated in accordance with this Policy's allocation provision.

All other terms and conditions of this policy remain unchanged.

**Policy No.:**  NHP665974      **Effective:**  1/1/2016

RSG 246008 0315

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# ABSOLUTE EXCLUSION – SEXUAL ABUSE WITH ALLOCATION

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with that portion of any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, in whole or in part, any forcible physical or sexual assault, battery or molestation, including rape; provided that, regardless of any other terms or conditions in this Policy, including any endorsements, the covered and uncovered portions of **Loss** arising from any such **Claim** shall be allocated in accordance with this Policy's allocation provision.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP665974     **Effective:** 1/1/2016

RSG 206096 0315

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# AMENDED NOTICE OF CLAIM OR CIRCUMSTANCE – SPECIFIC POSITION TRIGGER

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance, is deleted and replaced by the following:

**C. Notice of Claim or Circumstance**

1. If, during the **Policy Period** or Discovery Period (if applicable), any **Claim** is first made, it shall be a condition precedent to the **Insurer's** obligation to pay, that the **Insured** give written notice of such **Claim** to the **Insurer** as soon as practicable after the **Insured's** <u>CEO, CFO, GC, or HR Director</u> first becomes aware of the **Claim**, but in no event shall such notice be given later than <u>sixty</u> (<u>60</u>) days after the expiration or earlier cancellation date of this Policy.

2. If, during the **Policy Period** or Discovery Period (if applicable), any **Insured** first becomes aware of any facts or circumstances which may reasonably be expected to give rise to a **Claim** against any **Insured** and, as soon as practicable thereafter, but before the expiration date or any earlier cancellation date of this policy, gives to the **Insurer** written notice, of such facts or circumstances along with the full particulars described below, then any **Claim** subsequently made against any **Insured** arising out of such facts or circumstances will be deemed first made during the **Policy Period**.  The written notice shall include, at a minimum:

   a. The names or identity of the potential claimants and a detailed description of the specific alleged **Wrongful Act**; and

   b. The circumstances by which the **Insured** first became aware of the specific alleged **Wrongful Act**.

All other terms and conditions of this policy remain unchanged.

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION V. – CONDITIONS, G. Cancellation; Renewal Provision is deleted in its entirety and replaced with the following:

**G. Cancellation; Renewal Provision**

The **Insured Organization** may cancel this policy at any time by written notice or by surrender of this policy to the **Insurer** at the address shown on the Declarations Page.

This policy may only be cancelled by or on behalf of the **Insurer** in the event the **Insured Organization** fails to pay any premium when due.  In the event of non-payment of premium by the **Insured Organization**, the **Insurer** may cancel this policy upon ten (10) days written notice.  The **Insurer** will mail notice to the **Insured Organization's** address as shown in Item 1. of the Declarations Page.  The mailing of such notice as aforesaid shall be sufficient proof of notice.

If the **Insured Organization** cancels this policy, the **Insurer** will retain the customary short rate proportion of the premium hereon.

The **Insurer** shall not be required to renew this policy upon its expiration.  The offer by the **Insurer** of renewal terms, conditions, Limit of Liability and/or premiums varying from those of the expiring policy shall not constitute a refusal to renew.

**Nonrenewal**

1.  Subject to provisions of paragraph 2. below, if the **Insurer** elects not to renew this policy, the **Insurer** will mail or deliver written notice stating the reason for nonrenewal to the **Insured Organization** shown in the Declarations Page and to the producer of record, at least sixty (60) days, but not more than one hundred twenty (120) days, before the expiration or anniversary date.

    The **Insurer** will mail or deliver said notice to the **Insured Organization**, and to the producer of record, at the mailing address shown in this policy.

2.  The **Insurer** is not required to send notice of nonrenewal in the following situations:

    a.  If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between the **Insurer** and a member of the **Insurer's** insurance group.

    b.  If the policy has been extended for ninety (90) days or less, provided that notice has been given in accordance with paragraph 1. above.

    c.  If the **Insured Organization** has obtained replacement coverage, or if the **Insured Organization** has agreed, in writing, within sixty (60) days of the termination of this policy, to obtain that coverage.

    d.  If the policy is for a period of no more than sixty (60) days and the **Insured Organization** is notified at the time of issuance that it will not be renewed.

    e.  If the **Insured Organization** requests a change in the terms or conditions or risks covered by this policy within sixty (60) days of the end of the **Policy Period**.

    f.  If the **Insurer** has made a written offer to the **Insured Organization**, in accordance with the timeframes shown in paragraph 1. above, to renew this policy under changed terms or conditions or at an increased premium rate, when the increase exceeds twenty five percent (25%.)

All other terms and conditions of this policy remain unchanged.

**Policy No.:**  NHP665974      **Effective:**  1/1/2016

RSG 203005 0611

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY – NOT FOR PROFIT ORGANIZATIONS**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**EXCESS DIRECTORS AND OFFICERS LIABILITY POLICY**
**EXCESS LIABILITY POLICY**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the **Insurer** has met our insurer deductible under the Terrorism Risk Insurance Act, the **Insurer** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as losses excluded by the Nuclear Exclusion.

All other terms and conditions of this policy remain unchanged.

**Policy No.:**  NHP665974      **Effective:**  1/1/2016

RSG 204081 0315

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# CLASS ACTION RETENTION

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION
DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY
DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

ITEM 4. RETENTION of the Declarations Page is amended to include the following:

**ITEM 4. RETENTION:**

$ _500,000_        Each claim for an actual or putative class action

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP665974        **Effective:** 1/1/2016

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# COVERAGE EXTENSION – EDUCATIONAL INSTITUTION MODIFIED

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

A.   SECTION III. – DEFINITIONS, I. **Insured Person** shall be amended by adding the following:

**Insured Person** shall include any past, present or future member of the faculty, student teacher, teaching assistant, representative to an education association of which the **Insured Organization** is a member, and any president, chancellor, provost, treasurer, vice president, dean, personnel director, executive director, risk manager, university counsel or other comparable senior administrator of the **Insured Organization**, regardless of whether they are considered as an **Employee** of the **Insured Organization** or an independent contractor.

B.   SECTION III. – DEFINITIONS, K. **Loss** shall be amended by adding the following:

**Loss** shall not include the return of tuition received by the **Insured Organization** or amounts in settlement reflecting such return of tuition.

C.   SECTION III. – DEFINITIONS, K. **Loss** shall be amended to include the following:

1.   **IRS Fines**

**Loss** shall include **Defense Expenses** incurred in connection with a **Claim** seeking an assessment of taxes, initial taxes, additional taxes, tax deficiencies, excise taxes or penalties pursuant to the following sections of the Internal Revenue Code of 1986 (as amended):

Section 4911 (tax on excess expenditures to influence legislation);

Section 4940 (a) (tax on net investment income of tax-exempt foundations);

Section 4941 (taxes on self-dealing);

Section 4942 (taxes on failure to distribute income);

Section 4943 (taxes on excess business holding);

Section 4944 (taxes on investments which jeopardize charitable purpose);

Section 4945 (taxes on taxable expenditures);

Section 6652 (c) (1) (A) and (B) (penalties for failure to file certain information returns or registration statements);

Section 6655 (a) (1) (penalties for failure to pay estimated income tax); and

Section 6656 (a) and (b) (penalties for failure to make deposit of taxes).

2.  **Excess Benefit Penalty Coverage**

    **Loss** shall include the ten percent (10%) "Excess Benefit" penalty which might be assessed by the Internal Revenue Service against any individual **Insured Person** for management involvement in the award of an "Excess Benefit".

    No coverage shall be provided by this policy for any individual **Insured Person** subject to the twenty five percent (25%) "Excess Benefit" penalty assessed by the Internal Revenue Service against any such **Insured Person** as a "disqualified person"; provided, however, that **Defense Expense** incurred in connection with the twenty five percent (25%) "Excess Benefit" penalty shall be provided to such **Insured Person**.

    Under no circumstances shall the **Insurer** be liable for the payment of **Loss** attributable to any two hundred percent (200%) penalty assessed by the Internal Revenue Service for failure to correct the award of an "Excess Benefit."

    For purposes of this endorsement, the terms "Excess Benefit" and "disqualified person" shall be defined in the "Taxpayer Bill of Rights 2", (H.R. 2337, P.L. 104–168).

3.  **EMTALA Coverage**

    **Loss** shall include the fines, penalties and **Defense Expenses** resulting from any **Claim** arising out of or in connection with an actual or alleged violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C., 1396dd et seq., and any similar state or local statute.

4.  **Government Funding Defense Expense Coverage**

    **Loss** shall not include the return of funds which were received from any federal, state or local governmental agency; provided, however, that with respect to any **Claim** arising out of the return or request to return, such funds, and subject to a Retention amount of $1,000,000 the **Insurer** shall pay **Defense Expenses** up to a total of $1,000,000 incurred by the **Insured** on a fifty percent (50%) coinsurance basis, with fifty percent (50%) of such **Defense Expenses** to be borne by the **Insured** and to remain uninsured; and the remaining fifty percent (50%) of such **Defense Expenses** to be covered by the **Insurer** subject to all other terms, conditions and exclusions of this policy.

D.  SECTION III. – DEFINITIONS, F. **Employment Practices Wrongful Act** shall be amended by adding the following:

    Any alleged defect in the tenure process, including the denial or removal of tenure.

E.  SECTION III. – DEFINITIONS shall be amended by adding the following:

    **14. Educators E&O Wrongful Act** shall include any educational malpractice or failure to educate, failure to provide medical or dental or psychological services, negligent instruction, failure to supervise, inadequate or negligent academic guidance or counseling, improper or inappropriate academic placement or discipline, failure to grant due process, invasion of privacy or humiliation, including violation of the Buckley Amendment, or the publication of defamatory material in a book, newspaper or other publication of the **Insured Organization**, or the broadcast of such material over a radio, cable, television or computer site owned or operated by the **Insured Organization**.

F.   SECTION IV. – EXCLUSIONS shall be amended by adding the following:

Alleging, arising out of, based upon, or attributable to, in whole or in part, the performance or rendering of or failure to perform professional services, where such services are undertaken for others for a fee; provided, this EXCLUSION shall not apply to:

1.   Any **Educators E&O Wrongful Act**;

2.   Any **Employment Practices Wrongful Act**;

3.   Any termination of hospital practice privileges; or

4.   The providing of legal services by the general counsel or other counsel employed by the **Insured Organization**.

As respects item F.1. above, any **Claim** alleging, arising out of, based upon, or attributable to, in whole or in part, an **Educators E&O Wrongful Act**, is subject to a Retention amount of $500,000.  No coverage shall apply to a **Claim** brought by or on behalf of an individual seeking damage for **Loss** caused by a health care provider's provision of, or failure to provide, medical, dental or psychological treatment, diagnosis or consultation.  Furthermore, **Loss** shall not include the return of tuition received by the **Insured Organization** or amounts in settlement reflecting such return of tuition.

All other terms and conditions of this policy remain unchanged.

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# COVERAGE EXTENSION – FEDERAL IMMIGRATION & NATIONALITY ACT

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

The amount set forth in Item 3. of the Declarations Page shall be the maximum aggregate Limit of Liability for all **Loss** under this policy.  Subject to the foregoing, the amount of $50,000 shall be the maximum aggregate Limit of Liability of the **Insurer** for **Loss** under this policy in connection with any **Claim** made against any **Insured** based upon, arising out of, or attributable to any actual or alleged violation of the Federal Immigration & Nationality Act, 8 U.S.C. Section 1101, et seq., as amended, including insurable fines or penalties under Section 1324a of that act ("FINA Claim"). This sublimit shall be part of and not in addition to the amount set forth in Item 3. of the Declarations Page.

A Retention in the amount of $150,000 shall apply to any **Loss** arising from a FINA **Claim**.  Such Retention shall be borne by the **Insured**, and the **Insurer** shall only be liable for the amount of **Loss** in excess of the above stated Retention amount.

Notwithstanding anything contained in this endorsement to the contrary, however, solely where coverage for any **Claim** is triggered pursuant to Insuring Agreement A of this Policy, the Retention normally applicable to Insuring Agreement A shall apply to such **Claim**, and the Retention stated here shall not apply.

All other terms and conditions of this policy remain unchanged.

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – FCRA AND FDCPA CLAIMS

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION
DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY
DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY
EXCESS DIRECTORS AND OFFICERS LIABILITY POLICY
EXCESS LIABILITY POLICY**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to, in whole or in part, any violation of:

(a) the Fair Credit Reporting Act ("FCRA"), or any amendments thereto or any rules or regulations promulgated thereunder, including the Fair and Accurate Credit Transaction Act ("FACTA");

(b) the Fair Debt Collection Practices Act ("FDCPA") or any amendments thereto or any rules or regulations promulgated thereunder; or

(c) any similar provision of any federal, state or local statutory law, or the common law, anywhere in the world.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP665974        **Effective:** 1/1/2016

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – PRIOR AND/OR PENDING LITIGATION BACKDATED

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION IV. - EXCLUSIONS, 10. is deleted and replaced with the following:

10. Alleging, arising out of, based upon or attributable to, in whole or in part, any litigation involving any **Insured** that was commenced or initiated prior to, or pending as of <u>December 10, 2006</u>, or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such prior or pending litigation.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP665974      **Effective:** 1/1/2016

RSG 206071 0204

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION-REMOVE ANTI-TRUST

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

SECTION IV. – EXCLUSIONS, 13. b. is deleted in its entirety.

All other terms and conditions of this policy remain unchanged.

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION - TELECOMMUNICATIONS CLAIMS

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**
**EXCESS DIRECTORS AND OFFICERS LIABILITY POLICY**
**EXCESS LIABILITY POLICY**

The **Insurer** shall not be liable to make any payment for **Loss** from any **Telecommunications Claim.**   A **Telecommunications Claim** is any **Claim**:

(a) Arising from, based upon, attributable to, or in consequence of any proceeding against any **Insured** brought by the Federal Trade Commission or any other federal, state or local regulatory agency or other administrative body alleging the violation of any federal, state or local laws or regulation pertaining to unsolicited or non-consensual advertising, through faxes, telephone calls, texting or any other medium; and/or

(b) Arising from, based upon, attributable to, or in consequence of, any actual or alleged violation of:

(i) The Fair Debt Collection Practices Act or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law or common law anywhere in the world;

(ii) The CAN-SPAM Act of 2003 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law or common law anywhere in the world;

(iii) The Telephone Consumer Protection Act (TCPA) of 1991 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law or common law anywhere in the world; or

(iv) Any other law, ordinance, regulation, statute or common law relating to any communication, distribution, publication, sending or transmission via telephone, telephone facsimile machine, computer or other telephonic or electronic devices.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP665974      **Effective:** 1/1/2016

RSG 206097 0315

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FULL SEVERABILITY

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION V. – CONDITIONS, K. Representations is deleted and replaced by the following:

K.  **Representations**

The **Insured** represents that the information, particulars, documents, representations and statements contained in the **Application** are complete, true and accurate; are deemed incorporated into and constituting part of this policy; are material to the acceptance of the risk assumed by the **Insurer** under this policy.  This policy is issued in reliance upon the truth of such representations.  No knowledge or information possessed by any **Insured** will be imputed to any other **Insured**.  If any of the information, particulars, documents, representations and statements contained in the **Application** are untrue, this policy will be void with respect to any **Insured** who knew of such untruth.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP665974     **Effective:** 1/1/2016

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# INSURING AGREEMENT A – SEPARATE LIMIT

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

Notwithstanding anything contained in this policy to the contrary, there shall be an addition to the maximum aggregate Limit of Liability available under this policy in the amount of $500,000.  This amount shall be in addition to the Limit of Liability as set forth in Item 3. of the Declarations Page and shall be available solely for **Loss** resulting from a **Claim** against any **Insured Persons** covered under SECTION I. INSURING AGREEMENT A. of this policy, and shall be subject to the following additional conditions:

(1)  Any **Loss** resulting from a **Claim** against any **Insured Persons** covered under SECTION I. INSURING AGREEMENT A. of this policy shall first be paid under the Limit of Liability as set forth in Item 3. of the Declarations Page, and such Limit of Liability must be completely exhausted by payment of **Loss** under SECTION I. INSURING AGREEMENTS A., B., and/or C. of this policy before **Loss** shall be paid under the additional Limit of Liability dedicated for **Insured Persons:** and

(2)  The additional Limit of Liability dedicated for **Insured Persons** shall be excess of any insurance available that is specifically excess of this policy and such excess insurance must be completely exhausted by payment of **Loss** thereunder before the **Insurer** shall have any obligation to make any payment on account of the additional Limit of Liability dedicated for **Insured Persons**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP665974     **Effective:** 1/1/2016

RSG 204143 0407

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# INVESTIGATIVE COSTS COVERAGE

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY – PRIVATE COMPANY**

A.  SECTION II. - COVERAGE EXTENSIONS shall be amended to include the following:

**Investigative Costs Coverage**

This policy shall cover **Loss** arising from all **Investigative Costs** which the **Insured Organization** shall become legally obligated to pay as a result of a **Shareholder Derivative Demand** first made during the **Policy Period** or Discovery Period, if applicable, against the **Insured Organization** for a **Wrongful Act** of an **Insured Person**.

B.  SECTION III. - DEFINITIONS is amended by adding the following with respect to coverage provided by this endorsement:

1.  **Investigative Costs** means reasonable costs, charges, fees (including attorneys' and experts' fees) and expenses incurred by the **Insured Organization**, its board of directors or any committee thereof in connection with the investigation or evaluation of any **Shareholder Derivative Demand**; provided, however, that **Investigative Costs** shall not include salaries, wages, benefits, expenses or fees of any director, officer or **Employee** of the **Insured Organization**.

2.  **Shareholder Derivative Demand** means any written demand by one or more shareholders of the **Insured Organization** made upon the board of directors of the **Insured Organization** to bring a proceeding in a court of law against any **Insured Person** for a **Wrongful Act**.

C.  The amount set forth in Item 3. of the Declarations Page shall be the maximum aggregate Limit of Liability for all **Loss** under this policy.  Subject to the foregoing, the amount of $250,000 shall be the maximum aggregate Limit of Liability of the **Insurer** for all **Investigative Costs**.  This sublimit shall be part of and not in addition to the amount set forth in Item 3. of the Declarations Page.

No Retention shall apply to **Investigative Costs** covered under this policy.  This provision shall not affect the applicability of the Retention amounts stated in Item 4. of the Declarations Page to all other covered **Loss** under this policy.

All other terms and conditions of this policy remain unchanged.

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# MODIFIED INSURED VS. INSURED EXCLUSION
# (CARVE BACK FORMER D&O'S)

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

SECTION IV. – EXCLUSIONS, 9. d. is deleted and replaced by the following:

    **d.**  Any **Claim** brought by any past director, officer, trustee, manager or equivalent executives of the **Insured Organization** who have not served as a director, officer, trustee, manager or equivalent executive for at least <u>three</u> (3) years prior to the date such **Claim** is first made, and if the **Claim** is brought and maintained totally independent of and without the solicitation, assistance, active participation or intervention of the **Insured Organization** or any **Insured Person** not described in this paragraph 9.d;

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP665974    **Effective:** 1/1/2016

RSG 246004 0609

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SEVERABILITY OF THE ENTITY

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

SECTION IV. – EXCLUSIONS, the paragraph immediately following EXCLUSION 3., is deleted and replaced by the following:

The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of EXCLUSIONS 1. through 3. above.

All other terms and conditions of this policy remain unchanged.

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## SIDE A AND B NON-RESCINDABLE COVERAGE

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**

Notwithstanding anything contained in this policy to the contrary, the coverage provided under SECTION I., INSURING AGREEMENT A. and B. shall be non-rescindable by the **Insurer**.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP665974      **Effective:** 1/1/2016

RSG 204158 0808

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SUBLIMIT – CREDENTIALING / PEER REVIEW

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

The amount set forth in Item 3. of the Declarations Page shall be the maximum aggregate Limit of Liability for all **Loss** under this policy.  Subject to the foregoing, the amount of $ 1,000,000 shall be the maximum aggregate Limit of Liability of the **Insurer** for **Loss** under this policy in connection with any **Claim** alleging, arising out of, based upon, or attributable to any credentialing and/or peer review activities of any **Insured**.  This sublimit shall be part of and not in addition to the amount set forth in Item 3. of the Declarations Page.

A Retention in the amount of $ 250,000 shall apply to any **Loss** arising from any credentialing and/or peer review activities.  Such Retention shall be borne by the **Insured**, and the **Insurer** shall only be liable for the amount of **Loss** arising from any credentialing and/or peer review activities which is in excess of the above stated Retention amount.

Notwithstanding anything contained in this endorsement to the contrary, however, solely where coverage for any **Claim** is triggered pursuant to Insuring Agreement A of this Policy, the Retention normally applicable to Insuring Agreement A shall apply to such **Claim**, and the Retention stated here shall not apply.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP665974     **Effective:** 1/1/2016

RSG 204112 0210

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SUBLIMIT-DEFENSE EXPENSES – WAGE AND HOUR CLAIMS

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**

The amount set forth in Item 3. of the Declarations Page shall be the maximum aggregate Limit of Liability for all **Loss** under this policy.  Subject to the foregoing, this Policy shall allow up to $50,000 solely for **Defense Expenses** in connection with **Claims** made against any **Insured** for violation of the Fair Labor Standards Act or any similar state or local law or regulation specifically governing the payment of wages or hours worked ("**Wage and Hour Claim**").  This sublimit shall be part of and not in addition to the amount set forth in Item 3. of the Declarations Page, and shall not act to create coverage for any form of relief sought or available in any **Wage and Hour Claim**.

A Retention in the amount of $150,000 shall apply to any **Wage and Hour Claim**.  Such Retention shall be borne by the **Insured**, and the **Insurer** shall only be liable for the amount of **Defense Expenses** in excess of the above stated Retention amount.

Notwithstanding anything contained in this endorsement to the contrary, however, solely where coverage for any **Claim** is triggered pursuant to Insuring Agreement A of this Policy, the Retention normally applicable to Insuring Agreement A shall apply to such **Claim**, and the Retention stated here shall not apply.

All other terms and conditions of this policy remain unchanged.

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# THIRD PARTY LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY – NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY – PRIVATE COMPANY**

A. The **Insurer** shall pay for **Loss** arising out of or in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to any **Third Party Discrimination** and/or **Third Party Harassment**.

B. SECTION III. – DEFINITIONS is amended by adding the following with respect to coverage provided by this endorsement:

1. **Third Party** means any person(s) with whom an **Insured** interacts.

2. **Third Party Discrimination** means any discrimination by an **Insured** in his or her capacity as such against a **Third Party** based on such **Third Party's** race, color, creed, religion, age, gender, national origin, sexual orientation or preference, disability, pregnancy or other protected status that is protected pursuant to any applicable federal, state or local statute or ordinance.

3. **Third Party Harassment** means any type of sexual or gender harassment as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin-based harassment that is by an **Insured** to a **Third Party**.

C. SECTION III. – DEFINITIONS, F. **Employment Practices Wrongful Act** is amended to include any actual or alleged **Third Party Discrimination** or **Third Party Harassment** as defined in paragraphs B.2. and B.3. above.

D. A Retention in the amount of $150,000 shall apply to **Loss** arising from any **Third Party Discrimination** or **Third Party Harassment**.  Such Retention shall be borne by the **Insured**, and the **Insurer** shall only be liable for the amount of **Loss** which is in excess of the above stated Retention amount.

Notwithstanding anything contained in this endorsement to the contrary, however, solely where coverage for any **Claim** is triggered pursuant to Insuring Agreement A of this Policy, the Retention normally applicable to Insuring Agreement A shall apply to such **Claim**, and the Retention stated here shall not apply.

All other terms and conditions of this policy remain unchanged.

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# THREE (3) YEAR BILATERAL DISCOVERY PERIOD

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION
DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY
DIRECTORS AND OFFICERS LIABILITY POLICY – PUBLIC COMPANY**

SECTION V. - CONDITIONS, H. Discovery Period is deleted and replaced with the following:

If the **Insurer** shall refuse to renew this policy or the **Insured Organization** shall cancel or refuse to renew this policy, the **Insured Organization** shall have the right, upon payment of <u>seventy-five</u> percent (<u>75</u>%) of the Full Annual Premium, to a period of three hundred and sixty five (365) days following the effective date of such cancellation or non-renewal (herein referred to as the "Discovery Period") in which to give written notice to the **Insurer** of any **Claim** first made against the **Insured** during said three hundred and sixty five (365) day period for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.  As used herein, "Full Annual Premium" means the premium stated in Item 5. of the Declarations Page and any additional premium(s) charged during the **Policy Period**.

Alternatively, the **Insured Organization** shall have the right to elect a Discovery Period greater than the three hundred and sixty five (365) Days referenced above.   The following alternative Discovery Period options are as follows:

| Discovery Period | Additional Premium |
|---|---|
| 730 Days | <u>125</u>% of Full Annual Premium |
| 1,095 Days | <u>150</u>% of Full Annual Premium |

The rights contained in this clause shall terminate unless written notice of such election together with the additional premium due is received by the **Insurer** at the address shown on the Declarations Page within <u>thirty (30)</u> days of the effective date of cancellation or non-renewal.

The Discovery Period is not cancelable and the additional premium charged shall be fully earned at the inception of the Discovery Period.  The Limit of Liability available under the Discovery Period is part of and not in addition to the Limit of Liability stated in Item 3. of the Declarations Page.

The rights contained in this clause shall not apply in the event of cancellation resulting from non-payment of premium.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHP665974      **Effective:** 1/1/2016

RSG 207002 0204



# www.RSUIextra.com

## Online Human Resource Loss Prevention Services for Directors and Officers Liability Policyholders

### Key Features

- Best Practice Help Line for call-in assistance
- Checklist database for lowering risk
- Links to important federal and state government sites
- Online library with up-to-date articles on productivity, leadership and loss prevention
- Sample Human Resource policies and forms
- Online reporting function allows the Site Administrator to monitor usage
- Online training modules designed for managers and supervisors with the ability to adapt programs to meet their own needs.  Best Practice training modules include:
  - Preventing Sexual Harassment
  - Preventing Discrimination
  - Preventing Wrongful Termination
  - Promoting Ethical Behavior

### How to get started

1. Designate a person to serve as the Site Administrator for your organization.
2. Go to *www.RSUIextra.com*.
3. Click the *Register* link on the left-hand side of the home page.
4. Enter your RSUI policy number as the Passcode/Organization Code (i.e. NHP123456).
5. Complete the Registration Information and click *Submit*.
6. You are now registered as the Site Administrator.

### Who is a Site Administrator?

A Site Administrator is often a person who works with personnel or legal matters and is the person who will oversee the use of *www.RSUIextra.com*.  A Site Administrator will have the ability to recruit and add other users as well as make training decisions.

### Questions?

Please click *CONTACT US* at *www.RSUIextra.com* on the upper right hand side of the home page.  You will be directed to The McCalmon Group for assistance.

*This site is administered by The McCalmon Group.*

RSG 204154 0509



RSUI Indemnity Company

**Corporate Office**
945 East Paces Ferry Rd.
Atlanta, GA  30326-1160

# DIRECTORS AND OFFICERS LIABILITY POLICY PRIVATE COMPANY

**NOTICE:** THIS IS A CLAIMS MADE AND REPORTED POLICY THAT APPLIES ONLY TO THOSE **CLAIMS** FIRST MADE AGAINST THE **INSURED** DURING THE **POLICY PERIOD** THAT ARE REPORTED TO THE **INSURER** DURING THE **POLICY PERIOD**, OR WITHIN SIXTY (60) DAYS THEREAFTER.  THE LIMIT OF LIABILITY AVAILABLE TO PAY **LOSS** SHALL BE REDUCED OR TOTALLY EXHAUSTED BY PAYMENT OF **DEFENSE EXPENSES**.

**PLEASE READ YOUR POLICY CAREFULLY**

## CLAIM NOTICE

| | |
|---|---|
| **Mail notices to:** | **RSUI Group, Inc.**<br>**945 East Paces Ferry Rd.**<br>**Suite 1800**<br>**Atlanta, GA 30326-1160** |
| **Fax notices to:** | **(404) 231-3755**<br>**Attn: Claims Department** |
| **E-mail notices to:** | **reportclaims@rsui.com** |

*A member of Alleghany Insurance Holdings LLC*

# TABLE OF CONTENTS
# DIRECTORS AND OFFICERS LIABILITY POLICY
# PRIVATE COMPANY
# PLEASE READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGE**

Item 1. – Named Insured and Address
Item 2. – Policy Period
Item 3. – Limit of Liability
Item 4. – Retention
Item 5. – Premium
Item 6. – Endorsements Attached

**SECTIONS**

I.    **INSURING AGREEMENTS** ................................................................................. 3

II.   **COVERAGE EXTENSIONS** ............................................................................ 3
      Marital Estate ...................................................................................................... 3
      Outside Board Extension .................................................................................... 3
      Estates and Legal Representatives .................................................................... 3

III.  **DEFINITIONS** ................................................................................................. 3

IV.   **EXCLUSIONS** ............................................................................................... 6

V.    **CONDITIONS** ................................................................................................ 8
      Duty to Defend ................................................................................................... 8
      Limit of Liability; Retention; Payment of Loss .................................................... 8
      Notice of Claim or Circumstance ....................................................................... 9
      Cooperation ....................................................................................................... 9
      Other Insurance and Indemnification ................................................................. 9
      Allocation ........................................................................................................... 9
      Cancellation; Renewal Provision ....................................................................... 9
      Discovery Period .............................................................................................. 10
      Merger, Consolidation or Acquisition ............................................................... 10
      Bankruptcy and Priority of Payments ............................................................... 11
      Representations ............................................................................................... 11
      No Action Against Insurer ................................................................................. 11
      Subrogation ...................................................................................................... 12
      Authorization and Notices ................................................................................ 12
      Changes ........................................................................................................... 12
      Assignment ...................................................................................................... 12
      Acceptance ...................................................................................................... 12
      Headings ......................................................................................................... 12
      Governing Law Clause ..................................................................................... 12
      Territory ........................................................................................................... 12
      Nuclear Exclusion ........................................................................................... 13

Words and phrases that appear in **bold** text have special meaning.  Refer to SECTION III. - DEFINITIONS.

In consideration of the payment of premium and in reliance upon all statements made to the **Insurer** in the **Application**, and subject to the terms, conditions, definitions, exclusions and limitations hereinafter provided, the **Insurer** agrees:

## SECTION I. - INSURING AGREEMENTS

**A.** With the **Insured Person** that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of such **Insured Person** all **Loss** such **Insured Person** is legally obligated to pay, except and to the extent that the **Insured Organization** is required or permitted to indemnify such **Insured Persons**.

**B.** With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** for which the **Insured Organization** is required or permitted to indemnify the **Insured Person**.

**C.** With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against the **Insured Organization** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** the **Insured Organization** is legally obligated to pay.

## SECTION II. - COVERAGE EXTENSIONS

### A. Marital Estate

This policy shall cover **Loss** arising from any **Claim** made against the lawful spouse or any legally recognized domestic partner of an **Insured Person** for **Claims** arising solely out of his or her status as the spouse or domestic partner of an **Insured Person** (where such status is derived by reason of statutory law or common law) where such **Insured Person** is entitled to coverage under this policy.  Such coverage shall extend to any **Claim** in which a recovery is sought from marital community property, property jointly held by the **Insured Person** and the spouse or domestic partner, or property transferred from the **Insured Person** to the spouse or domestic partner.

Provided, however, that this COVERAGE EXTENSION shall not extend coverage to any **Claim** for, arising from, based upon or attributable to any actual or alleged **Wrongful Act** of the spouse or domestic partner.

### B. Outside Board Extension

This policy shall cover **Loss** arising from an **Insured Person** having served, at the direction of and with the consent of the **Insured Organization**, as Director, Officer, or Trustee for any eleemosynary corporation or other not for profit organization where such **Insured Person** is entitled to indemnification by the **Insured Organization**.

This COVERAGE EXTENSION shall be excess of any indemnification and/or insurance that may be permitted or provided by such eleemosynary corporation or organization, regardless of payment made by or on behalf of such eleemosynary corporation or organization, including but not limited to any other Director and Officer Liability Insurance or similar insurance provided for, to, or by any such eleemosynary corporation or organization.

### C. Estates and Legal Representatives

This policy shall cover **Loss** arising from any **Claim** made against the estates, heirs, legal representatives or assigns of an **Insured Person** who is deceased, or against the legal representatives or assigns of an **Insured Person** who is incompetent, insolvent or bankrupt, for the **Wrongful Act** of such **Insured Person**.

## SECTION III. - DEFINITIONS

**A.** **Application** means the application attached to and forming a part of this policy, or any prior policy, including any materials submitted or requested in connection with such application, all of which are deemed a part of this policy.

**B.** **Claim**, either in the singular or the plural, means:

**1.** A written demand for monetary or non-monetary relief;

**2.** A civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

    **a.** Receipt or service of a complaint or similar pleading;

    **b.** Return of an indictment (in case of a criminal proceeding); or

    **c.** Receipt of a notice of charges;

**3.** An administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") or equivalent state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the **Insured**.

The DEFINITION of **Claim** shall include an **Employment Practices Claim**; provided, the DEFINITION of **Claim** shall not include any internal or external labor or grievance proceeding which is pursuant to a collective bargaining agreement.

**C.** **Defense Expenses** means reasonable and necessary legal fees and expenses incurred, with the **Insurer's** consent, by any **Insured** in defense of a **Claim**, including any appeal therefrom. **Defense Expenses** however, shall not include:

**1.** Remuneration, overhead or benefit expenses associated with any **Insured Person**; or

**2.** Any obligation to apply for or furnish any appellate or similar bond.

**D.** **Employee** means any past, present or future employee of the **Insured Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee of the **Insured Organization.** An individual who is leased or contracted to the **Insured Organization** shall also be an **Employee**, but only if the **Insured Organization** provides indemnification to such leased or contracted individual in the same manner as is provided to the **Insured Organization's** employees.

**E.** **Employment Practices Claim** means any **Claim** alleging an **Employment Practices Wrongful Act**.

**F.** **Employment Practices Wrongful Act** means any actual or alleged:

**1.** Wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied employment contract;

**2.** Employment related harassment (including but not limited to sexual harassment);

**3.** Employment related discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

**4.** Employment-related retaliation;

**5.** Employment-related misrepresentation to an **Employee** or applicant for employment with the **Insured Organization**;

**6.** Employment-related libel, slander, humiliation, defamation and/or invasion of privacy;

**7.** Wrongful failure to employ or promote;

**8.** Wrongful deprivation of career opportunity, wrongful demotion or negligent **Employee** evaluation, including the giving of defamatory statements in connection with an **Employee** reference;

**9.** Employment related wrongful discipline;

**10.** Failure to grant tenure or practice privileges;

**11.** Failure to provide or enforce adequate or consistent organization policies or procedures relating to employment performance;

**12.** Violations of the following federal laws (as amended) including all regulations promulgated thereunder:

    **a.** Family and Medical Leave Act of 1993;

    **b.** Americans with Disabilities Act of 1992 (ADA);

    **c.** Civil Rights Act of 1991;

    **d.** Age Discrimination in Employment Act of 1967 (ADEA), including the Older Workers Benefit Protection Act of 1990; or

e.  Title VII of the Civil Rights Law of 1964 (as amended) and 42 U.S.C. Section 1983, as well as the Pregnancy Discrimination Act of 1978;

13. Violation of an **Insured Person's** civil rights relating to any of the above; or

14. Negligent hiring, retention, training or supervision, infliction of emotional distress, or violation of an individual's civil rights, when alleged in conjunction with any of the foregoing items 1. through 13.,

whether such **Employment Practices Wrongful Act** as described in 1-14 above is committed directly, indirectly, intentionally or unintentionally, but only if the **Employment Practices Wrongful Act** actually or allegedly pertains to acts committed by an **Insured** and are alleged against an **Insured** by an **Insured Person** or applicant for employment with the **Insured Organization**.

**G.  Insured** means any **Insured Organization** and/or any **Insured Person**.

**H.  Insured Organization** means:

1.  The organization named in Item 1. of the Declarations Page and any **Subsidiary** existing prior to or at the inception date of this policy; or

2.  Subject to SECTION V. - CONDITIONS, I. Merger, Consolidation or Acquisition of this policy, **Insured Organization** shall mean any **Subsidiary** created or acquired after the inception date of this policy; or

3.  In the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any.

**I.  Insured Person** means

1.  Any past, present or future director, officer, or **Employee**, management committee members or members of the Board of Managers of the **Insured Organization**; or

2.  In the event the **Insured Organization** or a **Subsidiary** thereof operates outside the United States, then the term **Insured Person** also means those titles, positions or capacities for such foreign **Insured Organization** or **Subsidiary** that are equivalent to the positions of directors or officers in the United States.

**J.  Insurer** means the Company providing this insurance as shown on the Declarations Page.

**K.  Loss** means damages (including back pay and front pay), settlements, judgments (including pre- and post-judgment interest on a covered judgment) and **Defense Expenses**. **Loss** (other than **Defense Expenses**) shall not include:

1.  Any amount for which the **Insureds** are not financially liable or for which there is not legal recourse to the **Insureds**;

2.  Amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;

3.  Disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing employment related benefit payments;

4.  The cost of creating or reinstating employment;

5.  Any amounts owed to any **Employee** as wages or compensation previously incurred or vested without regard to any **Claim**;

6.  Civil or criminal fines or penalties;

7.  Taxes, whether owed to or by any **Insured**;

8.  Amounts, including **Defense Expenses**, arising out of, based upon or attributable to actual or alleged liability or costs incurred by any **Insured** to modify any building or property in order to make such building or property more accessible or accommodating to any disabled person, or any actual or alleged liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an **Employment Practices Claim**;

9.  Matters that may be uninsurable under the law pursuant to which this policy shall be construed.

The DEFINITION of **Loss** shall include punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable. For purposes of determining whether punitive or exemplary damages, or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the **Insurer** agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insured** in that regard.

L. **Policy Period** means the period beginning at the inception date and ending at the expiration date stated in Item 2. of the Declarations Page or to any earlier policy cancellation or termination date.

M. **Subsidiary** means any entity of which the **Insured Organization**, either directly or indirectly, or through one or more of its **Subsidiaries**:

    **1.** Owns more than fifty percent (50%) of the voting stock and/or outstanding securities; or

    **2.** Has the right to elect or appoint more than fifty percent (50%) of the voting directors, management committee members or members of the Board of Managers.

A **Subsidiary** ceases to be a **Subsidiary** when the **Insured Organization** no longer owns more than fifty percent (50%) of the voting stock and/or outstanding securities, or no longer has the right to elect or appoint more than fifty percent (50%) of the voting directors, management committee members or members of the Board of Managers, or the means by which the **Insured Organization** is legally enabled to exercise fifty percent (50%) ownership or control is formally extinguished.

N. **Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty or any actual or alleged **Employment Practices Wrongful Act**, by:

    **1.** An **Insured Person** acting in his or her capacity as such and on behalf of the **Insured Organization** or any matter claimed against them solely by reason of their status as an **Insured Person**; or

    **2.** The **Insured Organization**.

## SECTION IV. - EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

**1.** Based upon, arising out of or attributable to any remuneration received by an **Insured**, or the granting of any remuneration to any **Insured**, without the previous approval of the stockholders or the Board of Directors, which remuneration is found to have been illegal; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** received remuneration to which such **Insured** was not legally entitled;

**2.** Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the gaining of any profit or advantage to which an **Insured** was not legally entitled; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** gained profit or advantage to which such **Insured** was not legally entitled;

**3.** Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any criminal or deliberate fraudulent act; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** committed such criminal or fraudulent act;

The **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Person** for the purpose of determining the applicability of EXCLUSIONS 1. through 3. above.

**4.** For actual or alleged bodily injury, sickness, disease or death of any person, mental anguish or emotional distress; damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is physically injured; provided, this EXCLUSION shall not apply to allegations of mental anguish or emotional distress made solely in connection with an **Employment Practices Claim**;

**5.** For actual or alleged libel, slander or defamation in any form; provided, this EXCLUSION shall not apply to allegations of libel, slander or defamation in any form made solely in connection with an **Employment Practices Claim**;

**6.** For violation of any of the responsibilities, obligations or duties imposed by: The Fair Labor Standards Act (except the Equal Pay Act) or any state or local statutory or common law, regulation or ordinance that governs payment or administration of wages, hours worked, or employee entitlements; the Employee Retirement Income Security Act of 1974; the National Labor Relations Act; the Worker Adjustment and Retraining Notification Act; the Consolidated Omnibus Budget Reconciliation Act; the Occupational Safety and Health Act; any rules or regulations of any of the foregoing promulgated thereunder and amendments thereto; or any similar provisions of any federal, state or local statutory or common law that govern the same subject matter governed by the laws referenced in this section even if particular laws have some additional or different provisions; provided, this EXCLUSION shall not apply to **Loss** arising from a **Claim** for employment related retaliation;

7. Alleging, arising out of, based upon or attributable to any obligation pursuant to any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, this EXCLUSION shall not apply to **Loss** arising from a **Claim** for employment related retaliation;

8. For the actual, alleged or threatened discharge, dispersal, release or escape of pollutants or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, including but not limited to **Claims** alleging damage to the **Insured Organization**; provided, this EXCLUSION shall not apply to any **Claim** under SECTION I. - INSURING AGREEMENT A. of this policy.

   Pollutant includes (but is not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, whether live or inanimate, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed;

9. Brought by or on behalf of any **Insured**, or which is brought by any security holder of the **Insured Organization**, whether directly or derivatively, unless such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Insured**.  Provided, however, this EXCLUSION shall not apply to:

   a. Any **Claim** brought by an **Insured Person**, where such **Claim** is in the form of a cross-claim or a third-party claim for contribution or indemnity, which is part of and results directly from a **Claim** that is not otherwise excluded by the terms of this policy;

   b. An **Employment Practices Claim** brought by an **Insured Person**;

   c. Any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Insured Organization**, in or after any bankruptcy proceeding by or against an **Insured Organization**;

   d. Any **Claim** brought by any past director, officer, trustee, manager or equivalent executives of the **Insured Organization** who have not served as a director, officer, trustee, manager or equivalent executive for at least five (5) years prior to the date such **Claim** is first made, and if the **Claim** is brought and maintained totally independent of and without the solicitation, assistance, active participation or intervention of the **Insured Organization** or any **Insured Person** not described in this paragraph 9.d;

   e. Any **Claim** brought by an **Employee** of the **Insured Organization** who is not or was not a director or officer of the **Insured Organization** and where such **Claim** is brought by such **Employee** only in their capacity as a stockholder and independently of assistance from **Insureds** expressly as noted in section 9., above; or

   f. Any instigation of or involvement in any **Claim**, or solicitation, assistance, active participation or intervention by any **Insured** whistleblower under Section 806 of the Sarbanes-Oxley Act of 2002 or any rule or regulation promulgated thereunder, or under any similar whistleblower statute, rule or regulation under any other federal or state law.

   Provided further, however, that in the event that an **Insured Person** brings a cross-claim or third-party claim, as described in 9. a. above, against another **Insured Person**, then solely with respect to the **Loss** derived from a cross-claim or third-party claim, the **Insurer** shall be liable solely for **Defense Expenses**;

10. Alleging, arising out of, based upon or attributable to, in whole or part, any litigation involving any **Insured** that was commenced or initiated prior to, or was pending at the inception date of this policy, or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such prior or pending litigation;

11. Alleging, arising out of, based upon or attributable to, directly or indirectly, the same or essentially the same facts underlying or alleged in any matter which, prior to the inception date of this policy, has been the subject of notice to any insurer of a **Claim**, or a potential or threatened **Claim**, or an occurrence or circumstance that might give rise to a **Claim** under any policy of which this insurance is a renewal or replacement or which it may succeed in time;

12. Alleging, arising out of, based upon or attributable to any initial public offering of securities by the **Insured Organization** or alleging the purchase or sale of such securities subsequent to such offering;

**13.** With respect to INSURING AGREEMENT C. of this policy, only:

    **a.** For actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, secret or any other intellectual property rights;

    **b.** For actual or alleged violation of any law, whether statutory, regulatory or common law, with respect to any of the following activities: anti-trust, business competition, unfair trade practices or tortuous interference in another's business or contractual relationships; or

    **c.** Alleging, arising out of, based upon or attributable to, in whole or in part, any liability under or pursuant to any contract or agreement, whether oral, written, express or implied, including the liability of others assumed by an **Insured**, unless such **Insured** would have been liable in the absence of such contract or agreement; provided, this EXCLUSION shall not apply to **Defense Expenses** in connection with an **Employment Practices Claim**.

## SECTION V. - CONDITIONS

### A. Duty to Defend

It shall be the right and duty of the **Insurer** to defend any **Claim** against the **Insured** for which coverage applies under this policy, and the **Insurer** shall have the right to appoint counsel of it choosing.  No **Insured** may incur any **Defense Expenses**, admit liability for or settle any **Claim** or negotiate any settlement without the **Insurer's** prior written consent; such consent not to be unreasonably withheld.  Any **Defense Expenses** incurred or settlements made without the prior written consent of the **Insurer** will not be covered under this policy.  The **Insurer** shall have the right to appoint counsel, investigate and conduct negotiations and, with the consent of the **Insured**, to enter into the settlement of any **Claim** that the **Insurer** deems appropriate.  If the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendations;

    **1.** The **Insured** will thereafter be solely responsible for negotiating and defending such **Claim** at their own expense; and

    **2.** Subject to the **Insurer's** aggregate Limit of Liability stated in Item 3. of the Declarations Page, the **Insurer's** liability with respect of any such **Claim** will not exceed the amount for which such **Claim** could have been settled by the **Insurer**, including **Defense Expenses** incurred up to and until the time that the **Insured** refuses to consent to settlement.

### B. Limit of Liability; Retention; Payment of Loss

    **1.** The Limit of Liability stated in Item 3. of the Declarations Page is the maximum aggregate limit that the **Insurer** will pay for all **Loss** under all INSURING AGREEMENTS combined, arising out of any and all **Claims** first made against the **Insured** during the **Policy Period** and the Discovery Period (if purchased) and reported in accordance with the terms and conditions of this policy.

    The **Insurer** will have no obligation to pay **Loss** or to defend or continue to defend any **Claim** after the aggregate Limit of Liability, stated in Item 3. of the Declarations Page, has been exhausted by payment of **Loss**.  **Defense Expenses** shall be part of and not in addition to the Limit of Liability and payment of **Defense Expenses** by the **Insurer** will reduce the Limit of Liability.

    **2.** As a condition precedent to coverage under this policy, the **Insured** shall pay with respect to each **Claim** the applicable Retention amount, as identified in Item 4. of the Declarations Page.  The Retention amount shall be reduced solely by covered **Loss** and shall be applied to all **Loss**, including **Defense Expenses**, and the **Insurer** shall only be liable for the amount of **Loss** that is excess of the stated Retention amount.

    **3.** All **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single **Claim** for all purposes under this policy, shall be subject to the Retention stated in Item 4. of the Declarations Page, and shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**.

    **4.** In the event that a **Claim** implicates more than one of the Retention amounts stated in Item 4. of the Declarations Page, then the largest of the applicable Retention amounts shall be applied, but in no event shall more than one Retention amount be applied to a **Claim**.

5. The Retention amount applicable to SECTION I. - INSURING AGREEMENT A. of this policy, as stated in Item 4. of the Declarations Page, shall not be applicable under any circumstances where indemnification by the **Insured Organization** is permitted or required, regardless of whether the **Insured Organization** has agreed to indemnify an **Insured Person**, provided it shall apply when indemnification cannot be made by the **Insured Organization** by reason of the **Insured Organization's** financial insolvency.

6. The **Insurer's** duty to defend the **Insured** and pay **Defense Expenses** ends upon exhaustion of the Limit of Liability, which includes paying or tendering the Limit of Liability into court.

7. Except for payment of **Defense Expenses**, the **Insurer** shall pay for **Loss** only upon final disposition of any **Claim**.

C. **Notice of Claim or Circumstance**

1. If, during the **Policy Period** or Discovery Period (if applicable), any **Claim** is first made, it shall be a condition precedent to the **Insurer's** obligation to pay, that the **Insured** give written notice of such **Claim** to the **Insurer** as soon as practicable after such **Claim** is first made, but in no event shall such notice be given later than sixty (60) days after either the expiration date or any earlier cancellation date of this policy.

2. If, during the **Policy Period** or Discovery Period (if applicable), any **Insured** first becomes aware of any facts or circumstances which may reasonably be expected to give rise to a **Claim** against any **Insured** and, as soon as practicable thereafter, but before the expiration date or any earlier cancellation date of this policy, gives to the **Insurer** written notice, of such facts or circumstances along with the full particulars described below, then any **Claim** subsequently made against any **Insured** arising out of such facts or circumstances will be deemed first made during the **Policy Period**. The written notice shall include, at a minimum:

   a. The names or identity of the potential claimants and a detailed description of the specific alleged **Wrongful Act**; and

   b. The circumstances by which the **Insured** first became aware of the specific alleged **Wrongful Act**.

D. **Cooperation**

In the event of a **Claim** or notice of circumstances under SECTION V. - CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insured** will provide the **Insurer** with all information, assistance and cooperation that the **Insurer** reasonably requests, and will take no action, without the **Insurer's** prior written consent, that might prejudice the **Insured's** or the **Insurer's** position, potential or actual rights, or defense under this policy.

E. **Other Insurance and Indemnification**

Insurance provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this policy. This policy shall be specifically excess over any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

F. **Allocation**

If both **Loss** covered under this policy and loss not covered under this policy are jointly incurred either because a **Claim** includes both covered and non-covered matters or covered and non-covered causes of action or because a **Claim** is made against both an **Insured** and any other parties not insured by this policy, then the **Insured** and the **Insurer** shall use their best efforts to fairly and reasonably allocate payment under this policy between covered **Loss** and non-covered loss based on the relative legal exposures of the parties with respect to covered and non-covered matters or covered and non-covered causes of action.

If the **Insurer** and the **Insured** agree on an allocation of **Defense Expenses**, based on covered and non covered matters or persons, the **Insurer** shall advance **Defense Expenses** allocated to covered **Loss**. If there is no agreement on an allocation of **Defense Expenses**, the **Insurer** shall advance **Defense Expenses** that the **Insurer** believes to be covered under this policy until a different allocation is negotiated, arbitrated, or judicially determined.

Any negotiated, arbitrated or judicially determined allocation of **Defense Expenses** on account of a **Claim** shall be applied retroactively to all **Defense Expenses** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any advancement or allocation of **Defense Expenses** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other loss on account of such **Claim**.

**G. Cancellation; Renewal Provision**

The **Insured Organization** may cancel this policy at any time by written notice or by surrender of this policy to the **Insurer** at the address shown on the Declarations Page.

This policy may only be cancelled by or on behalf of the **Insurer** in the event the **Insured Organization** fails to pay any premium when due.  In the event of non-payment of premium by the **Insured Organization**, the **Insurer** may cancel this policy upon ten (10) days written notice.  The **Insurer** will mail notice to the **Insured Organization's** address as shown in Item 1. of the Declarations Page.  The mailing of such notice as aforesaid shall be sufficient proof of notice.

If the **Insured Organization** cancels this policy, the **Insurer** will retain the customary short rate proportion of the premium hereon.

The **Insurer** shall not be required to renew this policy upon its expiration.  The offer by the **Insurer** of renewal terms, conditions, Limit of Liability and/or premiums varying from those of the expiring policy shall not constitute a refusal to renew.

If the **Insurer** decides not to renew this policy, the **Insurer** will mail or deliver to the **Insured Organization** written notice of non-renewal, stating the reasons for non-renewal, at least sixty (60) days prior to the expiration date of this policy.

Any notice of non-renewal will be mailed or delivered to the **Insured Organization's** last mailing address known to the **Insurer**.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**H. Discovery Period**

If the **Insurer** shall refuse to renew this policy or the **Insured Organization** shall cancel or refuse to renew this policy, the **Insured Organization** shall have the right, upon payment of seventy five percent (75%) of the Full Annual Premium, to a period of three hundred and sixty five (365) days following the effective date of such cancellation or nonrenewal (herein referred to as the "Discovery Period") in which to give written notice to the **Insurer** of any **Claim** first made against the **Insured** during said three hundred and sixty five (365) day period for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.  As used herein, "Full Annual Premium" means the premium stated in Item 5. of the Declarations Page and any additional premium(s) charged during the **Policy Period**.  The rights contained in this clause shall terminate unless written notice of such election together with the additional premium due is received by the **Insurer** at the address shown on the Declarations Page within thirty (30) days of the effective date of cancellation or nonrenewal.

The Discovery Period is not cancelable and the additional premium charged shall be fully earned at the inception of the Discovery Period.

The Limit of Liability available under the Discovery Period is part of and not in addition to the Limit of Liability stated in Item 3. of the Declarations Page.

The rights contained in this clause shall not apply in the event of cancellation resulting from non-payment of premium.

**I. Merger, Consolidation or Acquisition**

1.  If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets do not exceed twenty five percent (25%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created or acquired **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place on or after the effective date of such creation or acquisition.

2.  If, after this policy's inception date, the **Insured Organization** creates or acquires a **Subsidiary** whose assets exceed twenty five percent (25%) of the total consolidated assets of the **Insured Organization**, not including the assets of the created or acquired **Subsidiary**, such **Subsidiary** shall be deemed to qualify as an **Insured Organization**, but solely for a **Wrongful Act** that takes place within the first ninety (90) days after the date of such creation or acquisition.  After this ninety (90) day period, the created or acquired **Subsidiary** shall no longer be deemed an **Insured Organization**, unless:

    a.  Written notice of the **Subsidiary's** creation or acquisition has been provided to the **Insurer** by the **Insured Organization**, as soon as practicable, and in no event later than ninety (90) days after the date of the creation or acquisition;

      **b.** The **Insured Organization** has provided the **Insurer** with any additional information the **Insurer** may request;

      **c.** The **Insured Organization** has agreed to the terms, conditions, exclusions and additional premium charge as may be required by the **Insurer**; and

      **d.** The **Insurer**, at its sole discretion, has agreed in writing to extend the coverage of this policy to the created or acquired **Subsidiary**.

   **3.** If during the **Policy Period**:

      **a.** The **Insured Organization** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

      **b.** Any person or entity or group of persons or entities acting in concert shall acquire an amount of more than fifty percent (50%) of the voting power for the election of directors of the **Insured Organization**;

         (either of the above events in 3. a. or b. are hereunder referred to as the "Transaction"),

   then this policy shall continue in full force and effect for any **Wrongful Act** occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the Transaction.  This policy may not be cancelled after the effective time of the Transaction and the premium for this policy shall be deemed fully earned as of such time.

   The **Insured Organization** shall give the **Insurer** written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

**J.** **Bankruptcy and Priority of Payments**

   The bankruptcy or insolvency of the **Insured Organization** or any **Subsidiary** shall not relieve the **Insurer** of any of its obligations hereunder.  The coverage provided by this policy, however, is intended primarily to protect and benefit the **Insured Persons**.

   With respect to the payment of the policy proceeds, it is agreed that covered **Loss** due under this policy shall be paid by the **Insurer** in the following order of priority:

   **1.** First pay such **Loss** for which coverage is provided under INSURING AGREEMENT A. of this policy;

   **2.** With respect to any remaining amount of the Limit of Liability still available after payment of such **Loss**, pay **Loss** for which coverage is provided under INSURING AGREEMENT B. of this policy; and

   **3.** With respect to any remaining amount of the Limit of Liability still available after payment of such **Loss**, pay **Loss** for which coverage is provided under INSURING AGREEMENT C. of this policy.

   The **Insured Organization** or its representatives and the **Insurer** shall use their best efforts to agree upon the priority of payment of all **Loss** under this policy.  If no agreement is reached regarding the priority of payments, then the **Insurer** and **Insured Organization** will submit the issue of such priority, and only that issue, to binding arbitration.

**K.** **Representations**

   The **Insured** represents that as of the inception date of this policy, the information, particulars, documents, representations and statements contained in, attached or referred to in the **Application** are: complete, true and correct; are the basis of this policy; are deemed incorporated into and constituting part of this policy; and are material to the acceptance of the risk assumed by the **Insurer**.  This policy is issued in reliance upon the truthfulness and completeness of such information, particulars, documents, representations and statements.  Except for knowledge or information possessed by, or facts or circumstances pertaining to the person or persons who signed the **Application**, no statement or representation in the **Application** or knowledge or information possessed by an **Insured Person** will be imputed to any other **Insured Person** for the purpose of determining the existence or availability of coverage under this policy.

**L.** **No Action Against Insurer**

   No action may be taken against the **Insurer** unless, as a condition precedent thereto, there has been full compliance with all of the terms and conditions of this policy and until the amount of any **Insured's** obligation to pay **Loss** has been finally determined either by judgment against such **Insured** after adjudicatory proceedings, or by written agreement of the **Insured**, the claimant and the **Insurer**.

No **Insured** has any right under this policy to join the **Insurer** as a party to any **Claim** against an **Insured** to determine the liability of such **Insured**, nor shall the **Insurer** be impleaded by an **Insured** or his, her or its legal representative in any such **Claim**.

**M. Subrogation**

In the event the **Insurer** makes any payment under this Policy, the **Insurer** shall be subrogated to all of the rights of recovery of the **Insured**, who shall execute all papers and take all necessary actions to secure such rights, including the execution of any documents necessary to enable the **Insurer** to effectively bring suit in the name of an **Insured**.

**N. Authorization and Notices**

The **Insured Persons** agrees that the **Insured Organization** acts on their behalf with respect to giving and receiving all notices and return of premium from the **Insurer**.

**O. Changes**

Notice to any agent or knowledge possessed by any agent or representations by persons acting on behalf of the **Insurer** do not effect a waiver or change in any part of this policy or estop the **Insurer** from asserting any right under the terms, conditions and limitations of this policy.  The terms, conditions and limitations of this policy can only be waived or changed by written endorsement.

**P. Assignment**

Assignment of interest under this policy does not bind the **Insurer** without its prior written consent.

**Q. Acceptance**

The **Insureds** agree that this policy, including the **Application** and any endorsements, constitutes the entire agreement between them and the **Insurer** relating to this insurance policy.

**R. Headings**

The description in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

**S. Governing Law Clause**

This policy shall, to the extent permitted by applicable law, be construed in accordance with the laws of the state or jurisdiction of incorporation or organization of the **Insured Organization** or, in the case of matters pertaining to a **Subsidiary**, the laws of the state or jurisdiction of incorporation or organization thereof.

**T. Territory**

This policy shall apply to **Claims** made against any **Insured** anywhere in the world.

**In Witness Whereof**, the **Insurer** has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the **Insurer**.

Secretary                                                                                              President

**THIS EXCLUSION CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NUCLEAR ENERGY LIABILITY EXCLUSION**

**1.  Nuclear Exclusion**

It is agreed that this policy does not apply:

**a.**  Under any Liability coverage, to injury, disease, death or destruction:

**(1)**  With respect to which an **Insured** under this policy is also an **Insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its Limit of Liability; or

**(2)**  Resulting from the **hazardous properties** of **nuclear material** and with respect to which:

**(a)**  Any person or organization is required to maintain financial protection pursuant to the atomic Energy Act of 1954, or any law amendatory thereof; or

**(b)**  The **Insured** is or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, with any person or organization.

**b.**  Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of a **nuclear facility** by any person or organization.

**c.**  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of **nuclear material**, if:

**(1)**  The **nuclear material**:

**(a)**  Is at any **nuclear facility** owned by, or operated by or on behalf of an **Insured**; or

**(b)**  Has been discharged or dispersed there from;

**(2)**  The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

**(3)**  The injury, sickness, disease, death or destruction arises out of the furnishing by an **Insured** or services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion applies only to injury to or destruction of property at such **nuclear facility**.

**d.**  As used in this Exclusion:

**(1)  Hazardous properties** include radioactive, toxic or explosive properties;

**(2)  Nuclear material** means **source material**, special material or **byproduct material**;

**(3)  Source material**, special **nuclear material** and **byproduct material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(4)  Spent Fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

**(5)  Waste** means any **waste** material:

**(a)**  Containing **byproduct material**; and

**(b)**  Resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph **(a)** or **(b)** thereof;

**(6)  Nuclear Facility** means:

**(a)**  Any **nuclear reactor**;

**(b)**  Any equipment or device designed or used for;

**i.**  Separating the isotopes of uranium or plutonium;

     **ii.**   Processing or utilizing **spent fuel**; or

     **iii.**  Handling, processing or packaging **waste**;

**(c)** Any equipment or device used for the processing, fabricating or alloying of special **nuclear material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**e.** **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or destruction of property, the word *injury* or *destruction* includes all forms of radioactive contamination of property.

**DIRECTORS AND OFFICERS LIABILITY-PRIVATE COMPANY
RENEWAL APPLICATION**



NOTICE:    THIS IS A CLAIMS MADE AND REPORTED POLICY THAT APPLIES ONLY TO THOSE CLAIMS FIRST
MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER
DURING THE POLICY PERIOD, OR THE DISCOVERY PERIOD, IF APPLICABLE.  THE LIMIT OF
LIABILITY AVAILABLE TO PAY LOSS SHALL BE REDUCED OR TOTALLY EXHAUSTED BY
PAYMENT OF DEFENSE EXPENSES.

## I.  GENERAL INFORMATION SECTION

1.  (a) Name of Organization:

Stephens Institute DBA Academy of Art University

(b) Organization Address:

79 New Montgomery Street, Attn: Human Resources
San Francisco, CA 94105

2.  Have there been any changes in the Organization operations within the last twelve (12)     Yes ☐  No ☒
months or is the Organization currently contemplating any merger or acquisition?
(If "Yes", please provide details on a separate page)

3.  Provide the following information on all Subsidiaries of the Insured Organization.  If "None", check here:  None ☒

| Subsidiary Name | Nature of Business | Percent Owned by the Insured Organization | Date Created or Acquired |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

4.  Stock / Unit Ownership of Insured Organization

(a) Number of common shares/units owned directly or beneficially by Directors and Officers:  5,000

(b) Please complete the following information:

| Names of Director or Officer Shareholders | Voting Shares Owned |
|---|---|
| Elisa Stephens | 53 % |
| | % |
| | % |
| Shareholders (include individual and corp. names) who are both non-directors and non-officers owning 5% or more of voting shares | Voting Shares Owned |
| Stephens Family Living Trust | 47 % |
| | % |

*If multiple shareholders, please include attachment

Please identify any family relationships among the individuals listed above: _____

Elisa Stephens is daughter to Trust Owner

5. Has the applicant or any of its subsidiaries had any private placement or security offerings within the last 12 months, or does the applicant or any of its subsidiaries contemplate any private placement or securities offerings in the next 12 months (offerings include any debt offering and/or any offerings under the JOBS Act including but not limited to Crowdfunding)?   Yes ☐ No ☒

(If "Yes", please provide details on a separate page)

6. Does the organization have an incident response plan for data breaches?   Yes ☐ No ☒

7. How often do you test your incident response plan?   *Sensitive data housed by 3rd party*

8. If applicable, is the organization Health Insurance Portability & Accountability Act (HIPAA) / Health Information Technology for Economic & Clinical Health (HITECH) compliant?
If No, please provide details on a separate page.   Yes ☐ No ☐

9. If applicable, is the organization Payment Card Industry Data Security Standard (PCI/DSS) compliant?
If No, please provide details on a separate page.   Yes ☒ No ☐

10. Does the organization receive more than 10% of their revenues from any governmental source?   Yes ☐ No ☒

11. Does the organization offer, sell, advertise, market or solicit any product or service, or debt collection, employing any automatic/robo dialing, mobile phone texting, faxing, or any other type of communications based mechanism or strategy governed under the rules and regulations of the Telephone Consumer Protection Act of 1991 (TCPA), The Fair Debt Collection Practices Act or any laws governing unsolicited advertising or contacts for collections or promotion of goods or services?   Yes ☐ No ☒

12. Does the organization have a contract or agreement with any third party vendor to perform the above services on their behalf?   Yes ☐ No ☒

## II. EMPLOYMENT PRACTICES LIABILITY SECTION

1. Number of Employees:

| | Union | | Non-Union |
|---|---|---|---|
| Full time: | N/A | Full time: | 1088 |
| Part time: | N/A | Part time: | 1451 |
| Total: | N/A | Total: | 2539 |

2. Does the Organization anticipate making any reductions in the work force within the next twelve (12) months?   Yes ☐ No ☒
(If "Yes", please provide details on a separate page)

3. How many Employees or Officers have been terminated within the last twelve (12) months?
Number of Employees: __74__   Number of Officers: __0__

## III. FIDUCIARY LIABILITY SECTION

1. Please provide the following information for each Plan of the Applicant:

| Plan Name | Type of Plan (DC/DB/other) | Total Plan Assets ($) | Annual Contributions | Number of Participants |
|---|---|---|---|---|
| Academy of Art University Retirement Plan | DB | $43,831,213 | 3,835,262 | 854 |
| Academy of Art University 401(k) Retirement Plan | | $ | | |
| | | $ | | |

2. With respect to any ESOP proposed for coverage, please answer the following questions:

   a. What percentage of ownership of the Parent Company's stock does the Plan hold? _____ Ø_____

   b. If the Parent Company is privately held, by whom and how often is the Plan's stock valued? _N/A_____

   c. Who has the voting rights for the allocated and unallocated shares of stock in the Plan? _N/A_____

3. Have there been any mergers of Plans or any Plan terminations during the last 12 months?    Yes ☐  No ☒
   (If "Yes", please provide details on a separate page)

4. Have the Plans been reviewed within the last 12 months to assure that there are no
   violations of prohibited transactions and party-in-interest rules?                          Yes ☒  No ☐
   (If "No", please provide details on a separate page)

5. Has any Plan experienced any assessment of fees, fines or penalties under any voluntary
   compliance resolution program or by any governmental authority against any plan?            Yes ☐  No ☒
   (If "Yes", please provide details on a separate page)

The undersigned authorized Officer of the Organization, on behalf of the Organization and its Subsidiaries, and on behalf of the Directors and Officers of the Organization and its Subsidiaries declares that to the best of his/her knowledge and belief, the information, particulars, documents, representations and statements contained in, attached or referred to in this application for insurance and/or as a result of the underwriting process are true and accurate and recognizes that the Insurer, in issuing this policy, will rely on such information, particulars, documents, representations and statements.

Although the signing of this application does not bind the undersigned to effect insurance, the undersigned agrees, on behalf of the Organization and its Subsidiaries, and on behalf of the Directors and Officers of the Organization and its Subsidiaries, that the information, particulars, documents, representations and statements contained in, attached or referred to in this application for insurance and/or as a result of the underwriting process shall be the basis of the contract should a policy be issued and that this application will be attached to and will become part of such policy. The Insurer is hereby authorized to make any investigation and inquiry it deems necessary in connection with this application.

NOTE:  This application must be signed by the Chairman of the Board or President and dated within thirty (30) days of the effective date of coverage.

The undersigned authorized Officer agrees that if the information supplied on this application changes between the date of this application and the effective date of the insurance, he/she (undersigned) will immediately notify the Insurer of such changes, and the Insurer may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance.

Signature _Elisa Stephens_____   Title _PRESIDENT_____
            (Chairman of the Board or President)

                                          Stephens Institute dba
Date _10·13·15_____        Organization _Academy of Art University_

# ACADEMY OF ART UNIVERSITY
# BOARD OF DIRECTORS

**OFFICERS:**

**Dr. Nancy Houston**
*Chairman*
1200 California Street #15A
San Francisco, CA 94109
757. 287.3765
757.747.3785 fax
nancy.houston@cox.net
*Term: February 2012 - February 2017*

**Dr. Elisa Stephens**
*President*
79 New Montgomery
San Francisco, CA 94105
415.618.6502
415.618.6294 fax
estephens@academyart.edu
Erika Ryan: eryan@academyart.edu
Anne Chen: achen@academyart.edu
*Term: February 20012 - February 2017*

**ACTIVE MEMBERS:**

**Jason Konesco**
HARRISON COLLEGE
500 North Meridian Street, Suite 500
Indianapolis, IN 46204-1213
317.656.4718
jason.konesco@gmail.com

**Jamie Williams, Associate Athletic Director**
University of Nebraska Athletics
One Memorial Stadium
Lincoln, NE 68588-0121
402.472.3062
jwilliams@huskers.com
*term expires: October 2016*

**Carolyn Wente**
Wente Family Estates
5565 Tesla Road
Livermore, CA 94550
925.456.2339 or 925.456.2300
Carolyn.wente@wentevineyards.com
term expires: October 2016

**Frank Vega**
399 S Atlantic Avenue
Cocoa Beach, FL 32931
415.430.5017
vegaonthebeach@gmail.com

**Charlotte Yates**
Yates LTD
3370 Little Valley Road
Sunol, CA 94586
(925) 314-5990
cyates@yatesltd.com
**Irena Schwaderer: ischwaderer@yatesltd.com**
*term expires: October 2016*

**Debra Zumwalt (Emeritus)**
General Counsel, Stanford University
Office of the General Counsel
Building 170, 3rd Floor
Main Quad
Stanford, California 94305-2038
650.723.6397
650.723.4323 fax
zumwalt@stanford.edu
Kabao Moua (kmoua@stanford.edu)

**Caroline Daniels**
1000 Green Street, # 704
San Francisco, CA 94133
415.828.4794
cdaniels@atp.com
*term expires Feb 2018*

**Anne Wilbur**
790 High Street
Palo Alto, CA 94301
650.847.4347
650.330.6001 fax
a@rwilbur.com
*term expires Feb 2017*

**Dr. Thomas Stauffer**
3080 Coombsville Road
Napa, CA 945558
415.516.8767
+1-707-225-5026 cell
415.673.4775 fax
tomstauffer@hotmail.com
*term expires Feb 2018*